16-CV-3977 (FB)(JO)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JEFFREY THEODAT,

Plaintiff,

-against-

DETECTIVE JOEL CROOMS AND POLICE
OFFICER CHRISTOPHER MCDONALD,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' POST-TRIAL MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50; MOTION FOR A NEW TRIAL PURSUANT TO FED. R. CIV. P. 59; AND MOTION FOR REMITTITUR**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, New York 10007*

*Of Counsel: Evan F. Jaffe and Phillip DePaul*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ........................................................................... 1

PROCEDURAL HISTORY .................................................................................. 1

EVIDENCE PRESENTED ................................................................................... 2

       A.  Plaintiff's Version of Events. ........................................................... 3

       B.  Defendants' Version of Events. ........................................................ 4

STANDARD OF REVIEW

       A.  Fed. R. Civ. P. 59 Motion for a New Trial. ...................................... 5

       B.  Fed. R. Civ. P. 50(a) Judgment as a Matter of Law. ........................................................................................... 6

       C.  Fed. R. Civ. P. 59(e) Discretionary Judgment Amendments. .................................................................... 7

ARGUMENT

     POINT I

       DETECTIVE JOEL CROOMS IS ENTITLED TO A NEW TRIAL PURSUANT TO RULE 59 ............................................ 9

       A.  A New Trial Should be Granted on Plaintiff's False Arrest and Battery Claims Because the Weight of the Evidence Supports that There was Probable Cause to Arrest Plaintiff Because He Possessed Marijuana on May 25, 2015. ......................................... 9

       B.  Alternatively, a New Trial Should be Granted Because the Court Failed to Properly Charge the Jury under Rule 51 on Probable Cause to Arrest. ............................................................................. 13

       C.  Detective Crooms is Entitled to Qualified Immunity or, Alternatively, the Court's Failure to Submit to the Jury Special Interrogatories regarding Qualified Immunity was Errorenous. ............................... 17

**Page**

D.  The Court Abused its Discretion by Ruling that Evidence of Plaintiff's Prior Arrests and Incarceration was Inadmissible............................................................ 20

E.  The Court Abused its Discretion in Admitting Evidence Pertaining to Non-Party Jahneiro Plummer's Arrest.............................................................. 22

F.  Plaintiff's Counsel's Engaged in Misconduct in Closing Argument.............................................................. 26

POINT II

OFFICER MCDONALD IS ENTITLED TO JUDGMENT AS A MATTER OF LAW, AT THE VERY LEAST A NEW TRIAL, ON THE FAILURE TO INTERVENE CLAIM ...................................................... 29

POINT III

THE JURY'S DAMAGE AWARDS MUST BE SET ASIDE AS UNSUPPORTED OR REMITTED ............................... 30

A.  The Jury's Compensatory Damages Award Should be Set Aside or Reduced. ...................................................... 30

B.  The Jury's Punitive Damages Awards Must be Vacated. ........................................................................... 32

CONCLUSION............................................................................................................... 35

**TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                           <u>Pages</u>

Alfaro v. Wal-Mart Stores, Inc.,
   210 F.3d 111 (2d Cir. 2000).............................................................................7

Alla v. Verkay,
   979 F. Supp. 2d 349 (E.D.N.Y. 2013) ...........................................................31, 33

Anderson v. Branen,
   17 F.3d 552 (2d Cir. 1994)...........................................................................14, 29

Apostol v. City of New York,
   No. 11-CV-3851 (RRM) (CLP),
   2014 U.S. Dist. LEXIS 40487 (E.D.N.Y. Mar. 26 2014) .......................................12

Ashcroft v. al-Kidd,
   563 U.S. 731 (2011).....................................................................................17

Ashley v. Civil,
   No. 14-CV-5559 (NGG) (SMG),
   2019 U.S. Dist. LEXIS 56006 (E.D.N.Y. Apr. 1, 2019) ........................................21

Banushi v. P.O. Palmer,
   No. 08-CV-2937 (KAM),
   2011 U.S. Dist. LEXIS 419 (E.D.N.Y. Jan. 4, 2011),
   aff'd, 500 F. App'x 84 (2d Cir. 2012) ...........................................................21

BMW of N. Am. v. Gore,
   517 U.S. 559 (1996)..............................................................................32, 33, 34

Cabral v. City of New York,
   No. 12 Civ. 4659 (LGS),
   2015 U.S. Dist. LEXIS 105392 (S.D.N.Y. Aug. 11, 2015)....................................34

Carey v. Piphus,
   435 U.S. 247 (1978).....................................................................................31

Carlisle v. City of New York,
   No. 05 Civ. 6825 (SA),
   2007 U.S. Dist. LEXIS 24695 (S.D.N.Y. Apr. 2, 2007).......................................12

Cash v. County of Erie,
   654 F.3d 324 (2d Cir. 2011)...........................................................................7

Cerrone v. Brown,
   246 F.3d 194 (2d Cir. 2001)..........................................................................17

**Cases**                                                                              **Pages**

Cicero v. City of New York,
    No. 11-CV-360 (NGG) (CLP),
    2011 U.S. Dist. LEXIS 80880 (E.D.N.Y. Jul. 25, 2011) .......................................................21

Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.,
    955 F. Supp. 2d 118 (E.D.N.Y. 2013) ..................................................................................26

Dancy v. McGinley,
    843 F.3d 93 (2d Cir. 2016)...................................................................................................31

Devenpeck v. Alford
    543 U.S. 146 (2004)..............................................................................................................13

District of Columbia v. Wesby,
    138 S. Ct. 577 (2018)............................................................................................................17

DLC Mgmt. Corp. v. Town of Hyde Park,
    163 F.3d 124 (2d Cir. 1998)...................................................................................................6

Earl v. Bouchard Transp. Co.,
    917 F.2d 1320 (2d Cir. 1990).................................................................................................8

Figueroa v. Mazza,
    825 F.3d 89 (2d Cir. 2016)...................................................................................................29

Gardner v. Federated Dep't Stores, Inc.,
    907 F.2d 1348 (2d Cir. 1990)...............................................................................................32

Gasperini v. Center for Humanities, Inc.,
    518 U.S. 415 (1996)................................................................................................................8

Gordon v. New York City Bd. of Euc.,
    232 F.3d 111 (2d Cir. 2000)..................................................................................................14

Guzman v. Jay,
    303 F.R.D. 186 (S.D.N.Y. 2014) ........................................................................................7, 8

Hallenbeck v. Albany,
    99 A.D.2d 639 (App. Div. 3d Dep't 1981) ...........................................................................32

ING Glob. v. United Parcel Serv. Oasis Supply Corp.,
    757 F.3d 92 (2d Cir. 2014)......................................................................................................7

Ishay v. City of New York,
    158 F. Supp. 2d 261 (E.D.N.Y. 2001) ..................................................................................23

**Cases**                                                                                     **Pages**

Jennings v. Yurkiw,
    No. 14-CV-6377 (SMG),
    2018 U.S. Dist. LEXIS 186602 (E.D.N.Y. Oct. 31, 2018) ...................................................... 8

Jimenez v. City of New York,
    No. 15-CV-3257 (BMC),
    2016 U.S. Dist. LEXIS 35998 (E.D.N.Y. Mar. 21, 2016) ..................................................... 13

Kennedy v. Supreme Forest Prods.,
    761 F. App'x 72 (2d Cir. 2019) ................................................................................................ 9

Kirsch v. Fleet St., Ltd.,
    148 F.3d 149 (2d Cir. 1998) ..................................................................................................... 8

Levitant v. N.Y.C. Human Res. Admin.,
    914 F. Supp. 2d 281 (E.D.N.Y. 2012),
    aff'd, 558 F. App'x 26 (2d Cir. 2014) ..................................................................................... 26

Lewis v. Fischer,
    No. 08-CV-3027 (JG) (LB),
    2009 U.S. Dist. LEXIS 19626 (E.D.N.Y. Mar. 12, 2009) ..................................................... 18

MacDermid Printing Sols. LLC v. Cortron Corp.,
    833 F.3d 172 (2d Cir. 2016) ..................................................................................................... 7

Mallis v. Bankers Trust Co.,
    717 F.2d 683 (2d Cir. 1983) ..................................................................................................... 6

Mason v. City of New York,
    949 F. Supp. 1068 (S.D.N.Y. 1996) ....................................................................................... 32

Memphis Community Sch. Dist. v. Stachura,
    477 U.S. 299 (1986) ............................................................................................................... 14

Milfort v. Prevete,
    3 F. Supp. 3d 14 (E.D.N.Y. 2014) .................................................................................... 33, 34

Miner v. City of Glens Falls,
    999 F.2d 655 (2d Cir. 1993) ................................................................................................... 31

Montgomery Ward & Co. v. Duncan,
    311 U.S. 243 (1940) ................................................................................................................. 6

Munafo v. Metropolitan Transp. Auth.,
    381 F.3d 99 (2d Cir. 2004) .................................................................................................. 7-8

**Cases**                                                                                    **Pages**

Nimely v. City of New York,
    414 F.3d 381 (2d Cir. 2005)........................................................................6

O'Neill v. Krzeminski,
    839 F.2d 9 (2d Cir. 1988) .........................................................................29

Olivier v. Robert A. Yeager Mental Health Center,
    398 F.3d 183 (2d Cir. 2005)........................................................................6

Parker v. Bulik,
    No. 11-CV-5412 (ADS) (SIL),
    2017 U.S. Dist. LEXIS 124301 (E.D.N.Y. Aug. 5, 2017)......................................14

Payne v. Jones,
    711 F.3d 85 (2d Cir. 2013)..........................................................................9

Philip Morris USA v. Williams,
    549 U.S. 346 (2007)................................................................................33

Phillips v. City of New York,
    871 F. Supp. 2d 200 (E.D.N.Y. 2012) .............................................................21

Provost v. City of Newburgh,
    262 F.3d 146 (2d Cir. 2001)........................................................................17

Rangolan v. Cty. of Nassau,
    370 F.3d 239 (2d Cir. 2004)........................................................................8

Reichle v. Howards,
    566 U. S. 658 (2012)...............................................................................17

Reid v. City of New York,
    No. 16-CV-4090 (FB) (SMG),
    2019 U.S. Dist. LEXIS 10925 (E.D.N.Y. Jan. 23, 2019) ......................................16

Reynolds v. Am. Airlines, Inc.,
    No. 14-CV-2429 (CLP),
    2017 U.S. Dist. LEXIS 198949 (E.D.N.Y. Nov. 28, 2017).....................................24

Song v. Ives Labor, Inc.,
    957 F.2d 1041 (2d Cir. 1992)........................................................................6

Stampf v. Long Island R.R. Co.,
    761 F.3d 192 (2d Cir. 2014).........................................................................7

**Cases**                                                                                      **Pages**

Starr Indem. & Liab. Co. v. Am. Claims Mgmt.,
    131 F. Supp. 3d 185 (S.D.N.Y. 2015),
    aff'd, 665 F. App'x 27 (2d Cir. 2016) ...........................................................................6

State Farm Mut. Auto. Ins. Co. v. Campbell,
    538 U.S. 408 (2003).............................................................................................9, 33

Stephenson v. Doe,
    332 F.3d 68 (2d Cir. 2003)......................................................................................19

Stern v. Shammas,
    No. 12-CV-5210 (NGG) (RER),
    2015 U.S. Dist. LEXIS 143194 (E.D.N.Y. Oct. 21, 2015)....................................14

Tesser v. Bd. of Educ. of City Sch. Dist. of New York,
    370 F.3d 314 (2d Cir. 2004)..............................................................................22, 23

Thomas v. Kelly,
    903 F. Supp. 2d 237 (S.D.N.Y. 2012).....................................................................31

Tretola v. Cty. of Nassau,
    14 F. Supp. 3d 58 (E.D.N.Y. 2014) ........................................................................32

Turley v. ISG Lackawanna, Inc.,
    774 F.3d 140 (2d Cir. 2014).....................................................................................8

United States v. Gabinskaya,
    829 F.3d 127 (2d Cir. 2016)....................................................................................14

United States v. Komasa,
    767 F.3d 151 (2d Cir. 2014)....................................................................................23

Vangas v. Montefiore Med. Ctr.,
    823 F.3d 174 (2d Cir. 2016).....................................................................................7

Wilson v. City of New York,
    No. 06-CV-229 (ARR),
    2006 U.S. Dist. LEXIS 90050 (E.D.N.Y. Dec. 13, 2006) ......................................20

Wisdom v. Undercover Police Officer #C0127,
    879 F. Supp. 2d 339 (E.D.N.Y. 2012) ....................................................................21

Zellner v. Summerlin,
    494 F.3d 344 (2d Cir. 2007)...............................................................................16, 19

**Statutes**                                                                          **Pages**

42 U.S.C. § 1983 ...................................................................................................1, 31

Admin. Code § 16-118(a) ....................................................................................13, 16

Fed. R. Civ. P. 50 ...............................................................................................1, 6, 7

Fed. R. Civ. P. 50(a) ...............................................................................................2, 6

Fed. R. Civ. P. 50(a)(1) ..............................................................................................6

Fed. R. Civ. P. 50(b) ..................................................................................................7

Fed. R. Civ. P. 51 ...............................................................................................13, 14

Fed. R. Civ. P. 51(c)(2)(A)-(B) ...............................................................................14

Fed. R. Civ. P. 56 ......................................................................................................6

Fed. R. Civ. P. 59 .................................................................................1, 5, 9, 14, 23

Fed. R. Civ. P. 59(a) ..................................................................................................5

Fed. R. Civ. P. 59(e) ..................................................................................................7

Fed. R. Civ. P. 61 ....................................................................................................23

Fed. R. Evid. 803(6) ................................................................................................23

Fed. R. Evid. 803(6)(A) ...........................................................................................24

N.Y. Penal Law § 110.00 .........................................................................................13

N.Y. Penal Law § 221.05 .............................................................................13, 16, 18

**Other Authorities**

11 <u>C. Wright & A. Miller, Federal Practice and Procedure</u> §§ 2805-10 (1973).............................6

## PRELIMINARY STATEMENT

The jury verdict and award represents a manifest injustice and the Court must set aside the verdict and grant a new trial pursuant to Federal Rules of Civil Procedure 50 and 59.  More specifically, plaintiff failed to establish that Officer Christopher McDonald knew plaintiff was falsely arrested and that Officer McDonald had a realistic opportunity to intervene; thus, Officer McDonald is entitled to judgment as a matter of law pursuant to Rule 50, at the very least, a new trial pursuant to Rule 59.

Additionally, defendants move pursuant to Rule 59 for a new trial on the following grounds: 1) the jury's verdict on plaintiff's false arrest and battery claims are against the weight of the evidence; 2) the Court's failure to properly charge the jury on probable cause to arrest was not harmless error; 3) Detective Crooms is entitled to qualified immunity or, alternatively, the Court's failure to submit to the jury special interrogatories regarding qualified immunity was erroneous; and 4) the Court's ruling to preclude plaintiff's arrest history and include evidence from non-party Jahneiro Plummer's arrest was erroneous.  Finally, to the extent the Court does not order a new trial, remittitur under Rule 59 should be granted because the jury's award of damages award is not supported by the evidence and must be set aside or, alternatively, the jury's damage awards were intrinsically excessive and not within a reasonable range of comparable jury verdicts and must be substantially reduced.

## PROCEDURAL HISTORY

Plaintiff Jeffrey Theodat brought this 42 U.S.C. § 1983 action against defendants City of New York, Detective Joel Crooms, Police Officer Christopher McDonald, and Detective Dalsh Veve alleging claims pursuant to for false arrest, illegal search and seizure, malicious prosecution, excessive force, and failure to intervene, as well as state law claims for battery, false arrest, malicious prosecution, and *respondeat superior* arising out of plaintiff's May 25, 2015

arrest for smoking marijuana in public in East Flatbush, Brooklyn.  On August 10, 2018, the Court dismissed plaintiff's malicious prosecution and search and seizure claims.  (Docket Entry No. 51).

On June 24, 2019, a trial commenced with respect to plaintiff's false arrest, excessive force, and battery claims against Detective Crooms and a failure to intervene claim against Officer McDonald.[1]  At the close of plaintiff's case in chief, defendants moved for judgment as a matter of law on all of plaintiff's claims pursuant to Rule 50(a).  (Trial Transcript, annexed to the Declaration of Evan F. Jaffe ("Jaffe Decl.") as Exhibit A, at 267:21-268:20).  Defendants also moved for qualified immunity, which the Court denied.  (Id. at 268:21-23).

On Wednesday, June 26, 2019, the case was submitted to the jury, who, later that day, returned a verdict in favor of Detective Crooms and Detective McDonald on plaintiff's excessive force claim and failure to intervene claims, respectively, premised on the alleged force.  (Verdict Sheet, Jaffe Decl., Ex. B, at 2-3).  The jury, however, returned a verdict in plaintiff's favor on his false arrest claim against Detective Crooms and awarded $100,000 in compensatory damages and $200,000 in punitive damages (id. at 1); on his battery claim against Detective Crooms and awarded $1,000 in compensatory damages and $7,500 in punitive damages (id. at 4);  and on his failure to intervene claim premised on false arrest against Officer McDonald and awarded $150,000 in punitive damages.  (Id. at 3).  Judgment has not been entered.

## EVIDENCE PRESENTED

The relevant evidence pertaining to plaintiff's claims is contained in the testimony of plaintiff, non-party David Saintloth, and defendant officers Crooms and McDonald, as well as the physical evidence pertaining to plaintiff's May 25, 2015 arrest.

---

[1] By letter dated June 20, 2019, plaintiff dismissed this action against Detective Dalsh Veve. (Docket Entry No. 77).

A.      **Plaintiff's Version of Events.**

At trial, plaintiff testified that, around 1:30 a.m. on May 25, 2015, he left a barbeque on East 46th Street and Avenue Q where he had been for several hours so that he could distribute party flyers.  (Trial Transcript, Jaffe Decl., Ex. A, at 45:5-46:15).  At some point, according to plaintiff, he walked towards his car and saw his friend, non-party Jahneiro Plummer, in front of Mr. Plummer's house and the two individuals exchanged a fist bump.  (Id. at 46:16-47:5, 48:3-5).  In contrast, however, at trial, plaintiff's friend David Saintloth testified that he, plaintiff, and Mr. Plummer were hanging out in Mr. Plummer's driveway for hours having drinks.  (Id. at 233:8-19).

According to plaintiff, immediately after he and Mr. Plummer met up, Mr. Plummer pointed behind plaintiff, at which time plaintiff observed three officers approach and grab plaintiff and Mr. Plummer.  (Id. at 47:6-10, 48:3-11).  Plaintiff testified the officer who grabbed plaintiff was Detective Crooms and the officer who grabbed Mr. Plummer was Officer McDonald.  (Id. at 48:20-49:19).  Plaintiff also testified that when Detective Crooms grabbed plaintiff, Detective Crooms twisted plaintiff's arm behind his back in a forceful manner in an attempt to pop plaintiff's arm out of the socket.  (Id. at 49:20-25).  Mr. Saintloth, who was purportedly present for this interaction, however, did not observe any officer use force on plaintiff and further testified that plaintiff did not request any medical attention.  (Id. at 242:13-17).

Thereafter, according to plaintiff, Detective Crooms searched plaintiff's pockets while Officer McDonald grabbed Mr. Plummer.  (Id. at 50:9-51:2).  Additionally, plaintiff testified the officers used their flashlights and searched throughout Mr. Plummer's driveway and property.  (Id. at 51:3-8).  David Saintloth, who was purportedly present, however, did not see the officers

3

search Mr. Plummer's property.  (Id. at 242:18-20).  According to plaintiff, a crowd formed and questioned the officers' actions; the officers told the individuals to move back.  (Id. at 51:9-20).

Plaintiff testified that he and Mr. Plummer were both arrested and thereafter placed in the same car and brought to the precinct.  (Id. at 51:21-52:12).  Plaintiff claimed he spent three to four hours in a cell at the precinct and was thereafter released with a ticket from Detective Crooms.  (Id. at 51:21-52:25, 53:17-55:4).  David Saintloth's testimony differed from plaintiff's as Mr. Saintloth testified that at the arrest scene, he observed three officers approach plaintiff and place him in one car while a separate three officers approached Mr. Plummer and placed him in a separate car.  (Id. at 238:19-241:8).  That night, plaintiff was arrested for criminal possession of marijuana in the fifth degree; however, plaintiff denied that he smoked marijuana and further testified that at some point after his arrest, he learned he was arrested for smoking marijuana. (Id. at 57:16- 58:11).  Plaintiff also denied that he was ever on the corner of Avenue D and East 46th Street on the night of his arrest.  (Id. at 60:22-25).

Plaintiff testified that soon after his arrest his arm and shoulder hurt; however, plaintiff did not seek medical treatment because he did not have insurance.  (Id. at 68:5-19).  Plaintiff claimed that his shoulder continues to hurt to this day and at some point got medical treatment, received some medicine, and did at-home therapy that plaintiff researched on the internet.  (Id. at 68:19-71:4).

**B.      Defendants' Version of Events.**

On May 24, 2015, Detective Crooms worked a tour from 9:30 p.m. until 6:05 a.m. on May 25, 2015 with his partners Officer McDonald and Detective Veve.  (Id. at 156:9-23). Around 1:56 a.m., Detective Crooms observed plaintiff, who was standing alone by the corner of East 46th Street and Avenue D, put an object towards his mouth and smoke it.  (Id. at 108:16-21,

112:6-10, 157:4-11, 158:7-13, 160:2-12).   At that time, Detective Crooms, whose car window was open, smelled marijuana.  (Id. at 158:16-23).

Thereafter, Detective Crooms approached the corner and observed plaintiff drop a marijuana cigar to the ground.  (Id. at 160:2-161:1).  Detective Crooms picked up the marijuana cigar, placed it in his pocket, and handcuffed and arrested plaintiff for smoking marijuana in public.  (Id. at 162:10-163:21, 173:2-19; Pl. Ex. 1).  Plaintiff did not resist Detective Crooms' use of handcuffs, complain of pain, or request medical attention.  (Id. at 164:2-19).  Officer McDonald was present during the arrest.  (Id. at 254:25-255:2).

Plaintiff was thereafter transported to the 67th Precinct where Detective Crooms performed a marijuana field test of the cigar recovered, which tested positive for marijuana.  (Id. at 165:7-8, 176:2-178:21; Pl. Ex. 6).  Detective Crooms then vouchered the marijuana cigar under Property Clerk Invoice No. 3000518865.  (Id. at 178:22-182:22; Pl. Ex. 7; Defs. Ex. A). Also at the precinct, Officer McDonald prepared the online arrest paperwork related to plaintiff's arrest, which information he received from Detective Crooms.  (Id. at 251:23-252:16).

At approximately 4:20 a.m., nearly two and a half hours after plaintiff's arrest, he was released from the 67th Precinct with a Desk Appearance Ticket.  (Id. at 182:23-183:15, 185:8-187:15; Pl. Exs. 8 and 10A).  At the precinct, plaintiff never complained of any injury or requested medical assistance.  (Id. at 187:16-24).  Detective Crooms, who was working a scheduled overtime tour, did not request nor receive any additional overtime for his tour.  (Id. at 149:19-25, 150:21-22, 201:6-10, 215:5-7).

## STANDARD OF REVIEW

### A.    Fed. R. Civ. P. 59 Motion for a New Trial.

Under Rule 59(a) of the Federal Rules of Civil Procedure, the court may "grant a new trial on all or some of the issues."  Fed. R. Civ. P. 59(a).  "'A motion for a new trial should be

granted when, in the opinion of the district court, the jury has reached a seriously erroneous result or … the verdict is a miscarriage of justice.'" DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 133 (2d Cir. 1998) (quoting Song v. Ives Labor, Inc., 957 F.2d 1041, 1047 (2d Cir. 1992)).  The court may also grant a motion for a new trial if "the verdict is against the weight of the evidence, that the damages awarded were excessive, or that for stated reasons the trial was not fair to the moving party." Mallis v. Bankers Trust Co., 717 F.2d 683, 691 (2d Cir. 1983) (citing Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940); 11 C. Wright & A. Miller, Federal Practice and Procedure §§ 2805-10, at 37-77 (1973)).  Moreover, a motion for a new trial is appropriate even in situations where the evidence adduced at the trial was sufficient to support the jury's verdict.  See Nimely v. City of New York, 414 F.3d 381, 392 (2d Cir. 2005).

Furthermore, in evaluating a motion for a new trial, the Court "need not view the evidence in the light most favorable to the nonmoving party; instead, the court may weigh the evidence — including the credibility of witnesses — independently." Starr Indem. & Liab. Co. v. Am. Claims Mgmt., 131 F. Supp. 3d 185, 188 (S.D.N.Y. 2015), aff'd, 665 F. App'x 27 (2d Cir. 2016) (Summary Order).

**B.      Fed. R. Civ. P. 50(a) Judgment as a Matter of Law.**

Under Rule 50(a), the court may grant judgment as a matter of law to a defendant after the close of plaintiff's case if it finds "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [plaintiff]" on his claims. Fed. R. Civ. P. 50(a)(1); see Olivier v. Robert A. Yeager Mental Health Center, 398 F.3d 183, 188 (2d Cir. 2005) (same).  "The same standard that applies to a pretrial motion for summary judgment pursuant to Fed. R. Civ. P. 56 also applies to motions for judgment as a matter of law during or after trial pursuant to Rule 50." Id. (citing several cases).  Where a jury has returned a verdict for the non-movant, a court may

grant judgment as a matter of law pursuant to Rule 50(b) "only if the court, viewing the evidence in the light most favorable to the non-movant, concludes that a reasonable juror would have been compelled to accept the view of the moving party." MacDermid Printing Sols. LLC v. Cortron Corp., 833 F.3d 172, 180 (2d Cir. 2016) (quoting Cash v. County of Erie, 654 F.3d 324, 333 (2d Cir. 2011)). A party who sought judgment as a matter of law at trial may renew the motion after trial under Rule 50(b). See generally Fed. R. Civ. P. 50(b).

Furthermore, the Court should set aside a jury's verdict where, as here "there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against him." Vangas v. Montefiore Med. Ctr., 823 F.3d 174, 180 (2d Cir. 2016) (alteration in original) (quoting Stampf v. Long Island R.R. Co., 761 F.3d 192, 197 (2d Cir. 2014)). In deciding such a motion, "'the court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury,' and 'must disregard all evidence favorable to the moving party that the jury is not required to believe.'" ING Glob. v. United Parcel Serv. Oasis Supply Corp., 757 F.3d 92, 97 (2d Cir. 2014) (internal quotation and citation omitted). The court may also enter judgment under Rule 50 if defendants are entitled to such relief based on a controlling rule of law. See, e.g., Alfaro v. Wal-Mart Stores, Inc., 210 F.3d 111, 115-16 (2d Cir. 2000).

## C.    Fed. R. Civ. P. 59(e) Discretionary Judgment Amendments.

Should the court choose to not grant a new trial, pursuant to Rule 59(e), the court may still grant a motion to alter or amend a judgment . Fed. R. Civ. P. 59(e). The court may do this "'to correct a clear error of law or prevent manifest injustice.'" Guzman v. Jay, 303 F.R.D. 186, 197 (S.D.N.Y. 2014) (quoting Munafo v. Metropolitan Transp. Auth., 381 F.3d 99, 105 (2d Cir.

2004)).  The Court has discretion to overturn a jury verdict "for excessiveness and order[] a new trial without qualification."  Kirsch v. Fleet St., Ltd., 148 F.3d 149, 165 (2d Cir. 1998) (citing Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 433 (1996) (internal quotation omitted)).

The trial court, in its authority, may also "enter a conditional order of remittitur, compelling a plaintiff to choose between reduction of an excessive verdict and a new trial." Kirsch, 148 F.3d at 165.  Remittitur "is the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial."  Earl v. Bouchard Transp. Co., 917 F.2d 1320, 1328 (2d Cir. 1990) (internal citation and quotation omitted).  In calculating a remittitur of an excessive jury award, "the court should reduce the award 'only to the maximum amount that would be upheld by the district court as not excessive.'"  Jennings v. Yurkiw, No. 14-CV-6377 (SMG), 2018 U.S. Dist. LEXIS 186602, at *41 (E.D.N.Y. Oct. 31, 2018) (citing Rangolan v. Cty. of Nassau, 370 F.3d 239, 244 (2d Cir. 2004)).

"While calculating damages is traditionally the province of the jury, the Second Circuit has held that an award can be amended or set aside as 'excessive'" in three circumstances:

> (1) where the court identifies an error that resulted in the improper inclusion of a quantifiable amount, (2) where, although a particular error cannot be identified, the award is intrinsically excessive, i.e., in excess of the amount any reasonable jury could have awarded, and (3) where the courts finds the amount of award shock[s] the judicial conscience and constitute[s] a denial of justice.

Guzman, 303 F.R.D. at 196-97 (internal quotation marks omitted) (quoting Kirsch, 148 F. 3d at 165).  While juries have "wide latitude in setting compensation for damages", remittitur may be granted when a jury's award "shock[s] the judicial conscience and constitute[s] a denial of justice."  Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 162 (2d Cir. 2014) (internal quotation omitted).

Moreover, as the Second Circuit held in Payne v. Jones, the courts "bear the responsibility to ensure that judgments as to punitive damages . . . are not excessive."  711 F.3d 85, 96 (2d Cir. 2013).  Thus, in determining whether the award of punitive damages "shocks the judicial conscience," courts must review the facts in relation to three factors: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases."  Kennedy v. Supreme Forest Prods., 761 F. App'x 72, 76 (2d Cir. 2019) (quoting State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 418 (2003)).  Furthermore, "[i]t should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence."  State Farm, 538 U.S. at 417.

## ARGUMENT

### POINT I

### DETECTIVE JOEL CROOMS IS ENTITLED TO A NEW TRIAL PURSUANT TO RULE 59

**A.**    **A New Trial Should be Granted on Plaintiff's False Arrest and Battery Claims Because the Weight of the Evidence Supports that There was Probable Cause to Arrest Plaintiff Because He Possessed Marijuana on May 25, 2015.**

Throughout trial, plaintiff had ample opportunity to refute that he possessed the marijuana that Officer Crooms recovered and vouchered as part of plaintiff's May 25, 2015 arrest, which was admitted into evidence.  (Trial Transcript, Jaffe Decl., Ex. A, at 181:4-8 (citing Defs. Ex. A)).  Yet, plaintiff never affirmatively denied that he did not possess the marijuana that was undisputedly linked to his arrest and argued instead that he did not *smoke* marijuana on May

25th.[2]  (Id. at 58:4-11: "Q: Had you been smoking marijuana that night – A: Absolutely not.  Q: --

that the officers arrested you? A: No.").

Moreover, plaintiff's testimony that he did not smoke marijuana was consistent with his

counsel's opening statement:

> "Now, he'll tell you he was not smoking marijuana that night ….
> Now -- so, he will tell you that the allegation that he was smoking
> marijuana that night was made up.  So this case it's not about
> whether the marijuana is right or wrong, he's saying I didn't do it."

(id. at 31:15-22), and closing argument:

> "He [Detective Crooms] knows Jeffrey wasn't smoking marijuana
> …. Ladies and gentlemen, this case -- this case started off with a
> lie.  The arrest report prepared by Officer Crooms is a lie.  It says
> that Jeffrey Theodat was arrested for smoking marijuana on the
> corner of Avenue D and East 46th Street …. why on earth would he
> be down here on the corner of Avenue D standing by himself
> smoking marijuana on a corner at two o'clock in the morning?  It
> makes no sense and it didn't happen."

(Id. at 303:20, 304:20-24, 305:4-7).  Additionally, plaintiff's friend David Saintloth testified that

plaintiff did not smoke marijuana on May 25th.  (Id. at 237:24-238:1).  Thus, while plaintiff

consistently maintained throughout trial that he did not *smoke* marijuana on May 25th, plaintiff

never put forth any evidence that he was not in *possession* of the recovered marijuana, a crime

for which Detective Crooms, at a minimum, had probable cause to arrest.

Defendants, on the other hand, put forth ample evidence that plaintiff possessed

marijuana.  (Id. at 160:2-161:1 (Detective Crooms approached plaintiff, who was alone, and saw

---

[2] The only conceivable moment during trial in which plaintiff denied possessing marijuana on
May 25, 2015 was during cross-examination about plaintiff's account of the barbeque he
purportedly attended.  A close examination of plaintiff's testimony, however, demonstrates that
he denied smoking marijuana at the barbeque, not possessing marijuana.  More specifically,
plaintiff was asked whether he had, i.e., drank, two beers at the barbeque, to which plaintiff
testified "Yeah, I think so."  (Id. at 80:14-18).  Immediately thereafter, and in response to the
same phrasing of whether plaintiff "had", i.e., smoked marijuana, plaintiff testified "No, I
didn't have no marijuana whatsoever, just those two beers."  (Id. at 80:19-21).

plaintiff drop a marijuana cigar to the ground, which Detective Crooms recovered); id. at 162:11-163:19 (Detective Crooms secured the marijuana that plaintiff dropped on the ground); id. at 176:2-178:21 (Detective Crooms conducted a marijuana field test of the object plaintiff dropped on the ground, which tested positive for marijuana); id. at 178:22-182:22 (Detective Crooms vouchered the marijuana cigar under Property Invoice No. 3000518865)).   Thus, the overwhelming evidence at trial demonstrated that plaintiff possessed the marijuana that Detective Crooms recovered, vouchered, and which was admitted into evidence as defendants' Exhibit A.   At trial, plaintiff offered no theory on where this marijuana came from and never once denied that it was his; rather, he merely avoided giving any testimony on that matter.

Accordingly, any conclusion that the evidence at trial supported a theory that the marijuana was planted by Detective Crooms and/or Officer McDonald is uncorroborated and cannot withstand a motion for Summary Judgment, let alone serve as evidence to support a verdict for plaintiff on the false arrest claim.   More specifically, plaintiff submitted no evidence to support the conclusion that marijuana was planted, either at the corner of East 46th Street and Avenue D, Mr. Plummer's driveway, or any location in which plaintiff interacted with defendant officers at or around the time of his arrest or at any point in relation to his arrest.   The only mention at trial of marijuana being planted was by plaintiff's counsel in summation:

> "Now, we saw the whole bit about the marijuana field test, of it being packaged, being vouchered.   Of course if they are going to charge somebody with marijuana, of course they're going to have to voucher a little bit of marijuana, otherwise they're going to be too easily found out, but they told you that they make a lot of marijuana arrests.   Officer McDonald said that over half his 250 arrests are from marijuana.   Think about that.   Over half of his arrests as a police officer are for possession of marijuana in a time when marijuana is getting legalized all over the country.   So they had access to marijuana.   If they wanted to put a little bit of marijuana and voucher it and say that it was Jeffrey Theodat's, that's the easiest thing in the world for them to do."

(Id. at 309:10-23).  Counsel's argument that marijuana was planted by Detective Crooms and/or Officer McDonald, however, is not evidence, as the Court instructed the jury, and was in no way supported by the evidence presented to the jury during this trial.  (Id. at 340:7-12).

Furthermore, plaintiff's counsel's argument lacks support in the record.  See Apostol v. City of New York, No. 11-CV-3851 (RRM) (CLP), 2014 U.S. Dist. LEXIS 40487, at *23 (E.D.N.Y. Mar. 26 2014) ("plaintiffs' speculation about [the arresting officer's] motive to fabricate the marijuana defies common sense and lacks support in the record").  More specifically, plaintiff clearly stated that only Detective Crooms handcuffed and arrested plaintiff.  (Id. at 49:20-50:25, 52:4-5).  At no point did plaintiff testify that Officer McDonald handed something to Detective Crooms.  In fact, according to plaintiff, Officer McDonald was involved with Mr. Plummer's arrest, searched Mr. Plummer's driveway, and was merely in the same area of plaintiff's arrest.  (Id. at 50:23-52:8).

Nor could plaintiff argue that marijuana was planted because "unsubstantiated, convenient claims — for example, that someone must have planted the marijuana" is not enough to create a genuine issue of material fact to survive Summary Judgment.  Apostol, 2014 U.S. Dist. LEXIS 40487, at *23; see Carlisle v. City of New York, No. 05 Civ. 6825 (SA), 2007 U.S. Dist. LEXIS 24695, at *11-12 (S.D.N.Y. Apr. 2, 2007) ("Plaintiff's unsupported, conclusory allegation that someone must have planted the evidence because there is no other way it could have gotten [there] is not sufficient to defeat a motion for summary judgment.").  As one Court held in a scenario such as this – where a plaintiff attempts to argue at trial, either through self-serving testimony or through counsel's argument on summation, that evidence was planted and the jury found in plaintiff's favor – the result would be that the Court "would have to set [the

12

verdict] aside and direct judgment for the defendants." Jimenez v. City of New York, No. 15-CV-3257 (BMC), 2016 U.S. Dist. LEXIS 35998, at *10 (E.D.N.Y. Mar. 21, 2016).

Therefore, since defendants offered substantial evidence that marijuana was possessed by, and recovered from plaintiff, and plaintiff failed to refute same, the jury's verdict that plaintiff was falsely arrested was against the weight of the evidence as defendants established probable cause to arrest plaintiff on May 25, 2015. Similarly, because plaintiff's battery claim was contingent on whether Detective Crooms was lawful in effectuating plaintiff's arrest, i.e., had probable cause to arrest, the jury's verdict on the battery claim was also against the weight of the evidence.

**B.      Alternatively, a New Trial Should be Granted Because the Court Failed to Properly Charge the Jury under Rule 51 on Probable Cause to Arrest.**

The law is well-settled that it is not necessary that the officer had probable cause to arrest plaintiff for the offenses with which he eventually charged the plaintiff, so long as the officer had probable cause to arrest plaintiff for *any* criminal offense. See Devenpeck v. Alford 543 U.S. 146, 152-153 (2004). In other words, an arrest made with probable cause for any offense – whether charged or not – is lawful. Id. While plaintiff testified at trial that he did not *smoke* marijuana on the date of the incident, the trial evidence supports that the jury could have found probable cause to arrest plaintiff for unlawful *possession* of marijuana, littering, and attempt to commit the above-referenced offenses. (See Penal Law §§ 221.05, 110.00; Admin. Code § 16-118(a)). As such, the jury should have been charged on this as defendants proposed in their Request to Charge (Docket Entry No. 74 at 6-7) and as requested at the June 26, 2019 charge conference (Trial Transcript, Jaffe Decl., Ex. A, at 280-281). Thus, because the Court failed to charge the jury on the proper law pertaining to probable cause to arrest, i.e. Devenpeck, a new trial is warranted.

"Among the grounds for granting a new trial under Rule 59 is a finding that a jury instruction was erroneous, and that the error was not harmless." Stern v. Shammas, No. 12-CV-5210 (NGG) (RER), 2015 U.S. Dist. LEXIS 143194, at *5 (E.D.N.Y. Oct. 21, 2015) (citing Gordon v. New York City Bd. of Euc., 232 F.3d 111, 116 (2d Cir. 2000)). "As a general matter, no particular wording is required for a jury instruction to be legally sufficient, but rather, th[e] Court must 'look to the charge as a whole to determine whether it adequately reflected the law and would have conveyed to a reasonable juror the relevant law'". United States v. Gabinskaya, 829 F.3d 127, 132 (2d Cir. 2016) (internal quotation omitted). Nonetheless, a "jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." Anderson v. Branen, 17 F.3d 552, 556 (2d Cir. 1994). Thus, "an erroneous instruction, unless harmless, requires a new trial." Id. (citing Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 312 (1986)).

Additionally, where a Rule 59 motion is premised on an objection to a jury instruction, Rule 51 "requires the movant to have raised that objection before the jury retires in order to preserve the objection." Parker v. Bulik, No. 11-CV-5412 (ADS) (SIL), 2017 U.S. Dist. LEXIS 124301, at *46 (E.D.N.Y. Aug. 5, 2017) (internal citation and quotation omitted). An objection is timely if: (1) it is made at the designated time for "object[ing] on the record and out of the jury's hearing before the instructions and arguments are delivered," i.e., at the charging conference; or (2) where "a party was not informed of an instruction or action on a request before [the charging conference], and the party objects promptly after learning that the instruction or request will be, or has been, given or refused." Fed. R. Civ. P. 51(c)(2)(A)-(B).

In the first instance, defendants satisfied the requirements under Rule 51 pertaining to their objections to the Court's failure to include Devenpeck-related language in the proposed jury

charge.  More specifically, prior to the charging conference, the Court provided the parties with the proposed jury instructions.  (Trial Transcript, Jaffe Decl., Ex. A, at 275:9-16).  Defendants thereafter noted their objections, on the record, to the proposed charge, namely, the failure to include language pertaining to probable cause to arrest for *any* offense pursuant to Devenpeck. (Id. at 280:10-25).  The Court acknowledged that defendants requested two additional penal law offenses to which defendants may have had probable cause to arrest plaintiff – unlawful possession of marijuana and literring – and that defendants were correct on their view of the law, i.e., that, according to Devenpeck, all that an officer needs is probable cause to arrest plaintiff for any criminal offense.  (Id. at 281:13-282:2).  Despite agreeing with defendants, the Court concluded that charging the jury on only one penal law offense (criminal possession of marijuana in the fifth degree) as opposed to three offenses was "[not] going to make a big difference."  (Id. at 281:20-25).

The Court's charge to the jury only on criminal possession of marijuana in the fifth degree, however, was erroneous and harmful because the jury was mistakenly instructed that, in order for them to find probable cause for plaintiff's May 25th arrest, defendants had to have observed plaintiff in possession of **and** smoking marijuana in public view. Specifically, the Court instructed the jury:

> "Now, the elements of criminal possession of marijuana in the Fifth Degree is spelled out in the New York penal law as follows: A person is guilty of criminal possession of marijuana in the Fifth Degree when he knowingly and unlawfully possesses marijuana in a public place as defined in a particular section of the statute **and** such marijuana is burning or open to public view."

(Trial Transcript, Jaffe Decl., Ex. A, at 353:1-8) (emphasis added).  Additionally, the Court noted that "[y]ou must determine whether there was probable cause to arrest the plaintiff for *that* crime [criminal possession of marijuana in the fifth degree] …. [and] If you find that Officer

Crooms has proven that he had probable cause to arrest Mr. Theodat for *that* underlying crime [criminal possession of marijuana in the fifth degree], then your verdict must be for Officer Crooms on the false arrest claim."  (Id. at 352:24-353:17) (emphasis added).

As the Supreme Court has made clear, probable cause can be established for *any* criminal offense, whether charged or not, and the Court's instruction in this case improperly limited the probable cause finding to whether the jury found that plaintiff both possessed **and** smoked marijuana in public.  In other words, the jury was incorrectly precluded from being able to determine whether there was probable cause to arrest plaintiff for mere **possession** of marijuana, as reflected in Penal Law § 221.05, to which there was overwhelming evidence at trial.[3]  Thus, the Court's failure to charge the jury on Devenpeck, and its specific exclusion of other crimes or violations for which plaintiff could have been arrested, i.e., unlawful possession of marijuana and littering, was an incorrect statement of law and not harmless error.

Moreover, earlier this year Your Honor noted in Reid v. City of New York that an officer has probable cause to arrest when the "'facts and circumstances sufficient to provide probable cause to believe that the person arrested has committed *any* crime.'"  No. 16-CV-4090 (FB) (SMG), 2019 U.S. Dist. LEXIS 10925, at *4 (E.D.N.Y. Jan. 23, 2019) (emphasis in original) (quoting Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007)).  Thus, because there was ample evidence to support that Detective Crooms had probable cause to arrest plaintiff on May 25, 2015 for unlawful possession of marijuana, as noted *supra* Point I.A, and/or littering[4] (see

---

[3] Pursuant to Penal Law § 221.05, a person is guilty of unlawful possession of marijuana when he knowingly and unlawfully possesses marijuana.

[4] Littering, under New York City Administrative Code § 16-118(a): No person shall litter, sweep, throw or cast, or direct, suffer or permit any servant, agent, employee, or other person under his or her control, to litter, sweep, throw or cast any ashes, garbage, paper, dust or other rubbish and refuse of any kind whatsoever, in or upon any street or public place, vacant lot, air shaft, areaway, backyard court, park, or alley.

Trial Transcript, Jaffe Decl., Ex. A, at 160:2-24, 206:17-207:2 (Detective Crooms observed plaintiff drop a marijuana cigar on the ground in a public place)), and the Court failed to charge the jury on same, a new trial is warranted.

**C.     Detective Crooms is Entitled to Qualified Immunity or, Alternatively, the Court's Failure to Submit to the Jury Special Interrogatories regarding Qualified Immunity was Errorenous.**

Based on the evidence presented at trial, Detective Crooms was entitled to qualified immunity as he had at least arguable probable cause to arrest plaintiff for unlawful possession of marijuana and littering.  The Supreme Court and the Second Circuit have recognized that police officers are entitled to qualified immunity unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'"  District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (citing Reichle v. Howards, 566 U. S. 658, 664 (2012)).

In cases of false arrest or imprisonment, the Second Circuit has defined a standard of qualified immunity as "arguable probable cause", which stands for whenever a reasonable police officer "'in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law.'" Cerrone v. Brown, 246 F.3d 194, 202-203 (2d Cir. 2001) (internal citation omitted).  Since conduct in the context of arguable probable cause is based on objective reasonableness, only where an officer's judgment was "so flawed that no reasonable officer would have made a similar choice," is the denial of qualified immunity appropriate.  Provost v. City of Newburgh, 262 F.3d 146, 169 (2d Cir. 2001).  Separately, for conduct to be "clearly established", existing law must have placed the constitutionality of the officer's conduct "beyond debate."  Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011).

The record clearly supports that it was objectively reasonable for Detective Crooms to believe, even if mistaken, that the marijuana that was undeniably recovered at the time of plaintiff's arrest was possessed by plaintiff.  As noted *supra* Point I.A, plaintiff did not testify that he did not possess the marijuana that was recovered by Detective Crooms on May 25th, rather, plaintiff merely denied smoking marijuana that day.  In fact, plaintiff never even provided any sort of explanation as to where the recover marijuana came from; he simply denied smoking it.  Without any evidence as to where the marijuana came from – other than the officer's testimony that it was plaintiff's – the only reasonable conclusion the jury could have come to was that the marijuana was plaintiff's.  Based on this record, it was objectively reasonable for Detective Crooms to believe that probable cause to arrest existed and, therefore, is entitled to qualified immunity.

Similarly, it cannot be said that no reasonable officer in Detective Crooms' position would believe that probable cause to arrest was lacking when plaintiff never denied possessing the marijuana that was recovered during his May 25th arrest.  Finally, there was no clearly established law from the Supreme Court or Second Circuit that stood for the proposition that officers cannot arrest an individual who does not deny possessing marijuana – in fact, the opposite is true as Penal Law § 221.05 makes clear that probable cause to arrest exists for an individual who unlawfully possesses marijuana.  Thus, the defendant officers are entitled to qualified immunity.[5]

To the extent the Court denies qualified immunity, the Court's failure to permit defendants' to submit special interrogatories to the jury regarding qualified immunity warrants a

---

[5] By extension, plaintiff's verdict on the failure to intervene claim against Officer McDonald would necessarily fail.  See, e.g., Lewis v. Fischer, No. 08-CV-3027 (JG) (LB), 2009 U.S. Dist. LEXIS 19626, at *17 n.3 (E.D.N.Y. Mar. 12, 2009).

new trial.  See Stephenson v. Doe, 332 F.3d 68, 81 (2d Cir. 2003) (vacating the judgment, remanding for a new trial, and endorsing the use of special interrogatories to assist the Court with "the ultimate legal determination of whether qualified immunity attaches on those facts.").

The Second Circuit has endorsed that, following a plaintiff's verdict, special interrogatories may be submitted to the jury to determine whether officers are entitled to qualified immunity.  See Zellner, 494 F.3d at 368 (when material facts pertaining to immunity are in dispute, the appropriate procedure is to allow the jury to resolve any disputed facts that are material to the qualified immunity issue so that the court may make the "ultimate determination of whether the officer's conduct was objectively reasonable.").

As noted in defendants' June 26, 2019 letter to the Court, prior to the jury's verdict, defendants' counsel, in an off the record conversation with the Court, raised the issue of submitting special interrogatories to the jury regarding the defense of qualified immunity. (Docket Entry No. 82).  This conversation occurred immediately prior to the court reporter arriving and the jury delivering the verdict.  (Id.).  After the verdict was delivered, the jury was immediately discharged; as such, defense counsel did not have an opportunity to put on the record the request for defendants' proposed special interrogatories regarding the defense of qualified immunity.  (Id.).

In this instance, had defendants been permitted to submit special interrogatories and had the Court instructed the jury on the appropriate Devenpeck law (see point I.B supra), defendants would have been entitled to qualified immunity.  For example, the jury could have found that Detective Crooms reasonably believed, even is mistaken, that plaintiff smoked marijuana, possessed marijuana, or littered on May 25, 2015.  Had the jury answered any of those questions affirmatively, defendants would have been entitled to qualified immunity.  Thus, since the jury

returned a verdict for plaintiff on his false arrest, failure to intervene, and battery claims, the Court erred in not permitting defendants to submit special interrogatories to the jury that would assist in determining whether the officers were entitled to qualified immunity and, therefore, defendants are entitled to a new trial.

### D.   The Court Abused its Discretion by Ruling that Evidence of Plaintiff's Prior Arrests and Incarceration was Inadmissible.

Defendants were unfairly prejudiced by the Court's ruling baring defendants from cross-examining plaintiff on his prior arrests and incarcerations.  (Trial Transcript, Jaffe Decl., Ex. A, at 7:1-6).  When the jury was charged on damages, the Court stated that plaintiff could receive compensatory damages, which included "pain and suffering caused by the injuries, and/or emotional distress that he may have suffered because of Officer Crooms."   (Id. at 360:20-25). The Court reiterated that plaintiff was entitled to emotional distress damages if the jury returned a verdict that Detective Crooms falsely arrested plaintiff, which occured after the jury's note inquiring about whether there was precedent or guidelines in assessing damages in similar-type cases.  (Id. at 362:15-21, 391:22-393:10).

The Court's instructions unfairly prejudiced defendants in that the jury was free to consider plaintiff's emotional damages resulting from his arrest without considering how plaintiff's eight other arrests, and time incarcerated for same, would mitigate plaintiff's emotional damages.   Courts in the Eastern District of New York have held that inquiry into a plaintiff's arrest history for the purposes of mitigating emotional damages is appropriate.  See Wilson v. City of New York, No. 06-CV-229 (ARR), 2006 U.S. Dist. LEXIS 90050, at *1-2 (E.D.N.Y. Dec. 13, 2006) (permitting inquiring into a plaintiff's arrest history when plaintiff claims emotional damages as "one who has had a number of prior arrests and detentions is likely to have suffered less distress than one who has never been detained."); see also Banushi v. P.O.

Palmer, No. 08-CV-2937 (KAM), 2011 U.S. Dist. LEXIS 419, at *7-9 (E.D.N.Y. Jan. 4, 2011)
("[b]ecause a plaintiff who has had a number of prior arrests and detentions is likely to have
suffered less distress than one who has never before been detained, . . . defendants may inquire
into plaintiffs' past arrests and incarcerations during the damages phase of the trial.") (internal
citations and quotation marks omitted), aff'd, 500 F. App'x 84 (2d Cir. 2012).

While the Court, prior to trial, stated that it would preclude inquiry into plaintiff's
criminal background because it would unduly prejudice plaintiff (Trial Transcript, Jaffe Decl.,
Ex. A, at 7:1-6), and reiterated same prior to summation (Id. at 279:4-17), the Court abused its
discretion in precluding defendants' inquiry into plaintiff's arrest history since plaintiff claimed
emotional damages resulting from the arrest at issue.  In fact, as Judge Garaufis held in Ashley v.
Civil, "the probative value of [plaintiff's two-dozen prior arrests] is not substantially outweighed
by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  No. 14-CV-
5559 (NGG) (SMG), 2019 U.S. Dist. LEXIS 56006, at *9 (E.D.N.Y. Apr. 1, 2019) (internal
quotation omitted).

Moreover, the overwhelming weight of authority in this Circuit supports defendants'
position.  See Wisdom v. Undercover Police Officer #C0127, 879 F. Supp. 2d 339, 342
(E.D.N.Y. 2012) (denying plaintiff's request to preclude arrest history as "[t]he parties agree that
such evidence is relevant to the issue of damages . . . and cases in this circuit support that
argument." (citing Cicero v. City of New York, No. 11-CV-360 (NGG) (CLP), 2011 U.S. Dist.
LEXIS 80880 (E.D.N.Y. Jul. 25, 2011)); see also Phillips v. City of New York, 871 F. Supp. 2d
200, 207 (E.D.N.Y. 2012) ("Plaintiff seeks emotional damages resulting from Defendants'
actions.  Accordingly, Defendants will be permitted to ask Plaintiff if he has previously been

arrested and if he has previously been incarcerated.  Defendants may also inquire into the dates and duration of Plaintiff's prior incarcerations.").

Here, because the Court precluded defendants from putting forth evidence of plaintiff's prior arrests and time in custody, plaintiff's counsel was free to argue in summation, as he did, that this arrest caused plaintiff "trauma" such that he should be rewarded with compensatory damages, i.e., pain and suffering. (Trial Transcript, Jaffe Decl., Ex. A, at 314:2-315:2: "He's been arrested for something he has no idea what they are charging him with or why they picked him up, that's a very upsetting event, and the trauma from that doesn't end when you get handed a desk appearance ticket and say bye-bye.  An event like that hurts.").  Considering plaintiff's extensive arrest history – which includes eight arrests prior to the incident and several days in custody – the jury had a right to hear this evidence as it mitigated plaintiff's claim of emotional damages from the arrest at issue.  Accordingly, because the Court prevented defendants from eliciting testimony about plaintiff's prior arrests and incarceration, defendants were prejudiced as the jury could not properly assess damages.  Therefore, a new trial should be granted.

**E.     The Court Abused its Discretion in Admitting Evidence Pertaining to Non-Party Jahneiro Plummer's Arrest.**

During trial, plaintiff submitted a significant amount of evidence regarding the arrest of non-party, non-trial witness Jahneiro Plummer; this evidence was not relevant and also significantly prejudiced defendants.  As such, the Court's ruling to permit plaintiff to introduce evidence regarding Jahneiro Plummer's arrest tainted the proceedings and, on this basis, a new trial should be granted.

"Whether an evidentiary error implicates a substantial right depends on 'the likelihood that the error affected the outcome of the case.'"  Tesser v. Bd. of Educ. of City Sch. Dist. of New York, 370 F.3d 314, 319 (2d Cir. 2004) (internal quotation and citation omitted).  Thus, "an

evidentiary error in a civil case is harmless 'unless [the movant] demonstrates that it is likely that in some material respect the factfinder's judgment was swayed by the error.'" Tesser, 994 F.3d at 319 (internal quotation and citation omitted).  In the context of evidentiary rulings, Fed. R. Civ. P. 61 "tracks the general principles applicable to Rule 59 motions."  Ishay v. City of New York, 158 F. Supp. 2d 261, 263 (E.D.N.Y. 2001); see Fed. R. Civ. P. 61 (an error in the admission or exclusion of evidence is not a ground for granting a new trial unless the "substantial rights" of a party have been affected and failure to grant a new trial would be inconsistent with "justice").

It is well-settled that, in order for hearsay evidence to be admitted as a business record under Fed. R. Evid. 803(6), a competent witness must lay a proper foundation.  See United States v. Komasa, 767 F.3d 151, 156 (2d Cir. 2014) ("To lay a proper foundation for a business record, a custodian or other qualified witness must testify that the document was kept in the course of a regularly conducted business activity and also that it was the regular practice of that business activity to make the record.").  Here, there was no evidentiary basis for plaintiff to be permitted to introduce into evidence Mr. Plummer's Arrest Report (Pl. Ex. 15), Complaint Report (Pl. Ex. 14), and Command Log entry (Pl. Ex. 10A).

In the first instance, it is undisputed that neither Jahneiro Plummer nor Detective Veve, his arresting officer, testified at trial.  Thus, as a threshold matter, no competent witness testified who could lay a foundation for admission of the above-referenced records.  Moreover, Detective Crooms testified that he did not recall the arrest of Mr. Plummer as Detective Veve, who was unavailable to testify at trial, arrested Mr. Plummer.  (Trial Transcript, Jaffe Decl., Ex. A, at 120:8-17, 122:20-123:3, 165:9-19).  Furthermore, Detective Crooms did not testify that he was at all involved in creating Mr. Plummer's arrest or complaint reports, nor did he have knowledge

with respect to when or with what information the reports were completed.  See Reynolds v. Am. Airlines, Inc., No. 14-CV-2429 (CLP), 2017 U.S. Dist. LEXIS 198949, at *7 (E.D.N.Y. Nov. 28, 2017) (precluding admission of an incident report, under the business record exception, where the witness could not testify as to who maintained the record or how it was kept); see also Fed. R. Evid. 803(6)(A).  Rather, Detective Crooms simply testified regarding what information was contained in the reports – by reading that information from a report he did not create.  (Trial Transcript, Jaffe Decl., Ex. A, at 120:11-17).

Additionally, there was no evidence submitted a trial as to the specific person who completed the command log entry relevant to Mr. Plummer's arrest; in fact, Detective Crooms testified that a supervisor is the individual who completes a command log entry – not the arresting officer.  (Id. at 129:15-130:10, 170:12-20).  Moreover, the information the supervisor uses to complete the command log entry is based off of the arresting officer's information, and in the case of Mr. Plummer's arrest, the arresting officer was Detective Veve, who again, did not testify at trial.  (Id. at 171:24-172:11).  Thus, the only proper witnesses who could have laid a foundation for admission of Mr. Plummer's arrest records were Mr. Plummer and Detective Veve, however, neither testified at trial.  Notwithstanding, and over defendants' objection, the Court permitted the command log regarding Mr. Plummer's arrest into evidence.  (Id. at 131:17-133:13).

Defendants respectfully submit that, consistent with their objections at the June 14, 2019 pre-trial conference to the proposed exhibit lists and at trial, it is clear that inclusion of the Plummer arrest records prejudiced defendants and misled and confused the jury as to the issues to be decided at trial.  It is undeniable that a large part of plaintiff's case as presented by his

counsel centered on Mr. Plummer's arrest.  (See, e.g., id. at 117:8-149:17, 188:24-194:1, 198:21-201:10, 204:12-206:2, 208:17-214:13, 302:2-311:6, 333:15-334:13).[6]

Moreover, in summation, plaintiff's counsel consistently referred to the facts and circumstances of Mr. Plummer's as a parallel to plaintiff's arrest, down to the arrest narratives, locations, and actions of the two men.  (Id. at 302, 306-311).  The extensive testimony and non-stop questioning by plaintiff's counsel regarding Mr. Plummer's arrest significantly prejudiced defendants, and despite Mr. Plummer not being a plaintiff nor a trial witness, forced defense counsel to attempt to cure the issue during summation; however, the damage had already be done.  (Id. at 325:20-25: "Members of the jury, it would not at all be surprising if yesterday you suddenly thought this case turned into one about Jahneiro Plummer.  Plaintiff's counsel spent the better part of two hours questioning Detective Crooms about Plummer's arrest, an arrest that has nothing to do with this case.").

The record clearly supports that the jury was presented with a significant amount of irrelevant, inadmissible, and highly prejudicial evidence regarding an arrest of a non-party, who was arrested by an unavailable witness.  This evidence was not only confusing and misleading for the jury, but was recognized by the Court.  (Id. at 266:15-21, 276: 13-17: plaintiff "rel[ied] upon a lot about [Plummer]" to prove his case and Mr. Plummer "was mentioned probably more than anybody else during the course of the trial.").  Because the Court permitted this improper and irrelevant evidence to be presented to the jury, namely, Mr. Plummer's Arrest Report (Pl.

---

[6] Mr. Plummer's outsized role in this trial was even more evident when David Saintloth testified that there was more than one plaintiff.  More specifically, in response to a question about whether plaintiff was placed in one car, Mr. Saintloth responded "Which plaintiff?  Jeffrey?" (Id. at 240:22-24).  Defense counsel had to clarify that Mr. Theodat was the only plaintiff in the action.  (Id. at 240:25-241:2).  It is reasonable to infer that defendants were prejudiced and the jury misled and confused about the relevance of Mr. Plummer's arrest to plaintiff's claims at issue, which involved whether *plaintiff*, and *only plaintiff*, was falsely arrested.

Ex. 15), Complaint Report (Pl. Ex. 14), and Command Log entry (Pl. Ex. 10A), a new trial is warranted.

**F.      Plaintiff's Counsel's Engaged in Misconduct in Closing Argument.**

The Court should order a new trial because plaintiff's counsel's deliberate misconduct in summation caused a seriously erroneous result and a miscarriage of justice.  A new trial may be granted where plaintiff's counsel engaged in misconduct that "cause[d] prejudice to the opposing party and unfairly influence[d the] jury's verdict."  Claudio v. Mattituck-Cutchogue Union Free Sch. Dist., 955 F. Supp. 2d 118, 144 (E.D.N.Y. 2013) (internal citation omitted).  The court should consider "the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, and the manner in which the parties and the court treated the comments."  Levitant v. N.Y.C. Human Res. Admin., 914 F. Supp. 2d 281, 311 (E.D.N.Y. 2012), aff'd, 558 F. App'x 26 (2d Cir. 2014).

In the first instance, plaintiff's counsel accused Officer McDonald of stealing marijuana from an unknown area and coordinating with Detective Crooms to plant same.  (Trial Transcript, Jaffe Decl., Ex. A, at 309:15-23).  There was no evidence whatsoever from plaintiff or his friend David Saintloth, or anyone else at trial, that Detective Crooms and/or Officer McDonald planted the marijuana recovered from plaintiff's arrest.  Nor was there any indication from plaintiff's counsel's questions of Officer McDonald that he assisted with, vouchered, or otherwise possessed any marijuana on the date of plaintiff's arrest such that he could have passed along marijuana to Detective Crooms for purposes of plaintiff's arrest.  Thus, counsel had no good faith basis for any of these arguments.  Nonetheless, plaintiff's counsel made the colossal inferential leap to say that Officer McDonald somehow obtained marijuana from some unknown arrest on some unknown date, passed it off to Detective Crooms, and Detective Crooms planted same.

26

In essence, plaintiff's counsel accused defendant officers of engaging in criminal and corrupt acts without any basis in evidence. (Id. at 316:18-23). There can be no doubt that plaintiff's counsel's comments unfairly influenced the jury's verdict on false arrest, battery, and failure to intervene, particularly the excessive awards for punitive damages, because the implication of the comments caused the jury to believe that the marijuana in evidence was obtained only through criminal acts by these defendant officers.

Second, plaintiff's counsel deliberately misled the jury by claiming that three officers – one of whom was not a defendant and did not testify in this action – were motivated to arrest individuals, including plaintiff, on May 25, 2015 to obtain overtime. (Id. at 305:8-16, 316:1-7). Here again, counsel made such arguments with no good faith basis to do so. With regards to Detective Veve, plaintiff's counsel did not designate any of Detective Veve's deposition testimony as part of the trial record. (Id. at 258:2-7). Nor did plaintiff introduce any evidence regarding Detective Veve's tour on May 25, 2015. Thus, plaintiff misrepresented to the jury that Detective Veve sought and/or obtained overtime to arrest someone on May 25, 2015.

Similarly, there was no evidence in the record that Officer McDonald worked an overtime tour, sought to obtain overtime, or otherwise obtained overtime in connection with the incident on May 25th. Plaintiff's counsel did not introduce any documents or solicit any testimony that indicated Officer McDonald worked overtime on May 25th. The only testimony from Officer McDonald was that he arrested an individual earlier in his tour, which testimony the Court deemed "not relevant." (Id. at 255:21-25). Thus, plaintiff's counsel inappropriately implied to the jury that Officer McDonald sought and/or obtained overtime on May 25th.

As it pertains to Detective Crooms, the record is clear that Detective Crooms worked an overtime tour from 2130, i.e., 9:30 p.m. on May 24, 2015, through 0605, i.e., 6:05 a.m. on May

25, 2015.  (Id. at 109:19-24, 149:19-25).  Similarly, there is no evidence in the record that Detective Crooms requested and/or received additional overtime on May 25, 2015 as he completed his scheduled tour at 6:05 a.m.  (Id. at 150:21-22, 199:1-9, 200:10-201:10).  Plaintiff's counsel, however, willfully misled the jury into believing that Detective Crooms received overtime because of plaintiff's May 25th arrest and thereafter asked the desk sergeant for additional overtime.  (Id. at 309:3-9, 316:1-7).  This implication unfairly influenced the jury into finding that plaintiff was arrested without probable cause and that the jury should punish Detective Crooms for same.

Finally, plaintiff's counsel's comments that Jeffrey Theodat was the "victim" (id. at 316:16-18), suffered "trauma" – even though there was no medical evidence or testimony to support such a statement, (id. at 314:19-22), and may have suffered adverse immigration problems as a result of this arrest severely prejudiced defendants.  (Id. at 315:17-316:1).  To begin, claiming that plaintiff was a victim was sure to inflame the jurors and arouse their sympathy, and it did as referenced in the excessive damages awards.  Moreover, plaintiff put forth no evidence demonstrating that he suffered trauma or other pain and suffering resulting from his arrest.  Furthermore, at no point did plaintiff claim that he was not a U.S. citizen or otherwise may have had immigration status issues as a result of this arrest.  Taken together, and in today's climate where issues of victim's and immigrant's rights are constant discussions in our society, plaintiff's counsel's comments inflamed the passions of the jury into thinking that plaintiff suffered trauma and may have had adverse immigration problems, despite no evidence in the record.  Accordingly, for the reasons stated above, a new trial is warranted.

## POINT II

## OFFICER MCDONALD IS ENTITLED TO JUDGMENT AS A MATTER OF LAW, AT THE VERY LEAST A NEW TRIAL, ON THE FAILURE TO INTERVENE CLAIM

Police Officer McDonald is entitled to judgment as a matter of law on plaintiff's failure to intervene claim. Based on the evidence presented at trial, no reasonable juror could have found – other than through wild speculation – that Officer McDonald knew of and had a reasonable opportunity to prevent plaintiff's purported false arrest.

Plaintiff's sole claim against Officer McDonald was for his alleged failure to intervene to stop plaintiff's purported false arrest. (Verdict Sheet, Jaffe Decl., Ex. B, at 3). It is clear that "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Anderson, 17 F.3d at 557. In order for plaintiff to have prevailed on this claim, plaintiff was required to prove by a preponderance of the evidence that Officer McDonald observed or had reason to know that Detective Crooms committed an unjustifiable arrest. Id. In addition, the officer must have had a realistic opportunity to intervene to prevent the harm from occurring. Id. Under this theory, "the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." Figueroa v. Mazza, 825 F.3d 89, 107 (2d Cir. 2016) (quoting O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988)).

The jury's verdict against Officer McDonald must be set aside and the Court should grant him judgment as a matter of law. As an initial matter, Officer McDonald had no recollection of plaintiff's arrest, other than inputting the arrest paperwork. (Trial Transcript, Jaffe Decl., Ex. A, at 246:14-19). Thus, the jury's liability finding was necessarily based upon plaintiff's testimony about Officer McDonald. Yet, plaintiff's testimony does not support the jury's finding.

According to plaintiff, Officer McDonald was one of the officers who walked up on him.  (Id. at 48:8-49:2).  But he was not the officer who grabbed plaintiff.  (Id. at 49:4-11).  Rather, Officer McDonald grabbed Mr. Plummer and flashed his flashlight.  (Id. at 49:12-19).  Officer McDonald did not handcuff plaintiff, nor was he the officer who gave plaintiff a ticket.  (Id. at 52:4-5; 55:3-4).  In fact, plaintiff "believe[d]" that the only physical interaction he had with Officer McDonald was that "they both were handling me, you know, back and forth when they were doing whatever they were doing."  (Id. at 83:14-16).

On this, no reasonable jury could have found Officer McDonald liable for plaintiff's failure to intervene claim.  Plaintiff provided no evidence that Officer McDonald observed or had reason to know that Detective Crooms committed an unjustifiable arrest.  Likewise, plaintiff presented no evidence that Officer McDonald had a realistic opportunity to intervene to prevent plaintiff's purported false arrest from occurring.  Therefore, the jury's verdict against Officer McDonald must be set aside, and the Court should enter judgment in Officer McDonald's favor.  At the very least, and for the reasons stated *supra*, the verdict is against the weight of the evidence and a new trial should be granted.

## POINT III

### THE JURY'S DAMAGE AWARDS MUST BE SET ASIDE AS UNSUPPORTED OR REMITTED

**A.     The Jury's Compensatory Damages Award Should be Set Aside or Reduced.**

If the Court does not grant judgment as a matter of law, or grant the defense of qualified immunity, or grant a new trial, defendants move for remittitur of the damage award.  First, this jury's award of $101,000.00 in compensatory damages is excessive, and it should shock the judicial conscious of this Court.  This is especially true because of the near-total absence of evidence relating to plaintiff's damages stemming from his purported false arrest.

An individual who has been falsely arrested is entitled to damages for his: (1) loss of liberty; and (2) for any physical and emotional distress.  See Thomas v. Kelly, 903 F. Supp. 2d 237, 262 (S.D.N.Y. 2012).  In the Second Circuit, "the burden is normally on the plaintiff to prove each element of a § 1983 claim, including those elements relating to damages."  Miner v. City of Glens Falls, 999 F.2d 655, 660 (2d Cir. 1993).  Thus, "an award of damages must be supported by competent evidence concerning the injury."  Carey v. Piphus, 435 U.S. 247, 264 n.20 (1978).

Here, plaintiff presented no credible evidence that would support such a high damages award.  First, plaintiff did not testify in any way about a single alleged emotional damage.  (Trial Transcript, Jaffe Decl., Ex. A, at 37-97).  Second, while plaintiff did present evidence regarding physical injury, that evidence related only to his excessive force claim against Detective Crooms.  (See, e.g., id. at 49:4-25, 68:3-71:8).  Since the jury rejected the excessive force claim, plaintiff cannot recover for his alleged physical injury.  See Dancy v. McGinley, 843 F.3d 93, 113 (2d Cir. 2016) (endorsing the district court's decision to address, on remittitur, plaintiff's "excessive force and false arrest injuries separately, attributing [plaintiff's] physical injuries to the excessive force and [plaintiff's] emotional injuries to his false arrest, to avoid double recovery for the same injuries.").  As a result, plaintiff was only entitled to recover for his loss of liberty.

It is true that loss of liberty damages can compensate for a person's "denial of free movement" and "harm to dignity," Alla v. Verkay, 979 F. Supp. 2d 349, 371-72 (E.D.N.Y. 2013).  Yet, the only evidence before this jury related to plaintiff's time in custody.  According to plaintiff's testimony at trial, it "felt like" he was held for "three, four hours." (Trial Transcript, Jaffe Decl., Ex. A, at 54:19-23).  According to Detective Crooms, and all of the NYPD records relating to plaintiff's arrest, plaintiff was arrested at 1:56 a.m. and was released from the precinct

at 4:20 a.m. – a period of about two-and-a-half hours.  (Id. at 186:13-187:15; Pl. Exs. 1 and 10-A).

The compensatory damage award of $101,000.00 – which amounts to plaintiff's time being worth over $40,000 an hour – is clearly excessive and should be set aside.  But, at the very least, the Court should reduce the compensatory damages award consistent with how other courts in this Circuit have done is similar cases. See, e.g., Gardner v. Federated Dep't Stores, Inc., 907 F.2d 1348, 1353 (2d Cir. 1990) (reducing award of $150,000 to $50,000 for deprivation of liberty where plaintiff was falsely arrested and in custody for approximately eight hours); Tretola v. Cty. of Nassau, 14 F. Supp. 3d 58, 84 (E.D.N.Y. 2014) (reducing an award for non-economic compensatory damages, including emotional distress and harm to reputation, from $2,414,395 to $175,000 in connection with false arrest claim with brief detention); Mason v. City of New York, 949 F. Supp. 1068, 1075 (S.D.N.Y. 1996) (reducing $100,000 award to $10,000 where plaintiff was handcuffed to a chair for two hours in the airport, did not sustain physical injuries, was out of public view, and did not describe emotional harm); Hallenbeck v. Albany, 99 A.D.2d 639, 640 (App. Div. 3d Dep't 1981) (reducing $25,000 damages award to $10,000 for false arrest claim where "plaintiff was detained three hours" and there was "no indication that he incurred any substantial physical or mental suffering.").  Accordingly, the Court should set aside, at the very least reduce, the jury's compensatory damages award.

**B.**     **The Jury's Punitive Damages Awards Must be Vacated.**

First, plaintiff did not present any evidence that the conduct of either Detective Crooms or Officer McDonald was reprehensible.  The Supreme Court has indicated that "the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct."  BMW of N. Am. v. Gore, 517 U.S. 559, 576 (1996).  Yet, the evidence presented at this trial regarding the defendants' actions falls far short

of the types of conduct courts have found to be reprehensible.  Plaintiff presented no evidence that either Detective Crooms or Officer McDonald "engaged in violent conduct."  Milfort v. Prevete, 3 F. Supp. 3d 14, 25-26 (E.D.N.Y. 2014) (relying on Gore, 517 U.S. 576-77.)  Indeed, the jury specifically rejected plaintiff's claim that Detective Crooms used excessive force in effecting his arrest. (Verdict Sheet, Jaffe Decl., Ex. B, at 2).  Additionally, plaintiff did not present evidence that Detective Croom or Officer McDonald "engaged in repeated acts of misconduct."  Milfort, 3 F. Supp. 3d at 25-26.

While plaintiff's counsel's arguments focused heavily on the fact that Detective Crooms and Officer McDonald lied in connection with their arrest of plaintiff, such that they "acted with malice or deceit," id., there was no objective evidence supporting this contention.  Plaintiff did not testify that he saw the officers falsifying police paperwork, and did not provide the jury with any evidence that they *planted* the marijuana recovered from the scene.  (Defs. Ex. A).

Moreover, punitive damages should reflect the harm caused to the plaintiff, and should be reflective of the claims that were at issue during the trial.  See Philip Morris USA v. Williams, 549 U.S. 346, 354 (2007).  The conduct at issue at trial, and the harm caused to the plaintiff, involved the decision to arrest plaintiff, not Detective Crooms' statements to the CCRB.  Any punitive damages assessed must relate to the arrest decision, and to the damages sustained as a result of that arrest, not post-hoc (and unsupported) allegations of perjury.  See Alla, 979 F. Supp. at 374 (finding that the "conduct that exposed the officers to punitive damages was falsely arresting [plaintiff], not lying under oath.").  The jury's award of punitive damages can be – and should be – vacated on that basis alone.

Second, the punitive damages also cannot stand because of the wide disparity between the awards and the harm suffered by the plaintiff.  See State Farm, 538 U.S. at 418.  The jury's

award of $357,500 in punitive damages bears no "reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct." Milfort, 3 F. Supp. 3d at 25.  As explained above, there was not a single piece of evidence presented of any damages plaintiff suffered as a result of his arrest except for the time he was in police custody. Even crediting plaintiff's testimony on this, plaintiff was in custody for what "felt like three, four hours." (Trial Transcript, Jaffe Decl., Ex. A, at 54:19-23).  Given the total lack of evidence of physical or emotional harm to the plaintiff as a result of his arrest, or any evidence of malice on the part of the defendants, this is simply not the case where punitive damages should be allowed. Contra Milfort, 3 F. Supp. 3d at 25 (finding punitive damages warranted where "[d]efendant's conduct was deserving of punishment, not merely because of any physical or emotional harm done to Plaintiff, but because the conduct itself was malicious and entailed an abuse of state power.").

Third, even if warranted, the punitive damages award is excessive and should be reduced when compared against awards upheld in similar cases.  Gore, 517 U.S. at 574.  In similar cases, courts have reduced the punitive damages.  See Cabral v. City of New York, No. 12 Civ. 4659 (LGS), 2015 U.S. Dist. LEXIS 105392 (S.D.N.Y. Aug. 11, 2015) (reducing a punitive damages award from $110,000 to $10,000 where plaintiff prevailed on wrongful detention and unlawful search claims); Milfort, 3 F. Supp. 3d at 27 (reducing punitive damages award from $40,000 to $5,000 where plaintiff prevailed on a false arrest claim – but not an excessive force claim – "and was held in custody for the relatively short time of one and a half hours.").  Accordingly, the Court should vacate, or, at the very least, reduce the punitive damages award.

## <u>CONCLUSION</u>

For the foregoing reasons, defendants respectfully request that the Court set aside the verdict and grant a new trial as to Detective Crooms, grant judgment as a matter of law to Officer Christopher McDonald, or, at the very least, a new trial, or, alternatively grant remittitur.

Dated:          July 26, 2019
                New York, New York

> **ZACHARY W. CARTER**
> Corporation Counsel
>     of the City of New York
> *Attorney for Defendants*
> 100 Church Street
> New York, New York 10007
> (212) 356-2354
>
>
> By:     _____/s/_____
>         Evan F. Jaffe
>         *Assistant Corporation Counsel*
>         Phillip DePaul
>         *Senior Counsel*

35