UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
JEFFREY THEODAT,

                    Plaintiff,

        -against-

THE CITY OF NEW YORK, NYPD
OFFICER JOEL CROOMS, and NYPD
OFFICER CHRISTOPHER
MCDONALD,

                    Defendants.
------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 1: 16-cv-3977 (FB)(SJB)

*Appearances:*
*For the Plaintiff*:
JOHN E. KNUDSON, ESQ.
Sivin & Miller, LLP
20 Vesey Street, Suite 1400
New York, NY 10007

*For the Defendant*:
GEORGIA M. PESTANA, ESQ.
Acting Corporation Counsel of the
City of New York
By: PHILIP R. DEPAUL, ESQ.
100 Church Street
New York, New York 10007

**BLOCK, Senior District Judge:**

On June 26, 2019, a jury returned a verdict awarding compensatory and punitive damages in favor of Plaintiff Jeffrey Theodat on his false arrest, battery, and failure to intervene claims against Defendants the City of New York, New York City Police Department ("NYPD") Officer Joel Crooms, and NYPD Officer Christopher McDonald.[1]   The defendants move for a new trial or remittitur under

---

[1] The jury found for the defendants on Theodat's excessive force claim.

1

Federal Rule of Civil Procedure 59 regarding the verdict against Crooms and for judgment as a matter of law under Federal Rule of Civil Procedure 50 regarding the verdict against McDonald.  For the following reasons, their motion is granted in part and denied in part.

<h1 style="text-align:center">I</h1>

At trial, Crooms testified as follows.  Around 1:56am on May 25, 2015, Crooms was in his patrol car when he saw Theodat standing alone by the corner of East 46th Street and Avenue D.  Crooms watched Theodat put an object in his mouth and smoke it.  Crooms smelled marijuana through his open car windows.  Crooms exited the car and approached Theodat, who dropped the marijuana cigarette to the ground.  Crooms then picked up the cigarette, pocketed it, and handcuffed and arrested Theodat for smoking marijuana in public.[2]  Theodat was held in custody for about two-and-a-half hours.

---

[2] On the date of Theodat's arrest, May 25, 2015, smoking even small amounts of marijuana in public was an arrestable offense.  It was not until early 2018 that the Brooklyn District Attorney, Eric Gonzalez, announced that his office would not prosecute low-level marijuana offenses, including smoking marijuana in public. DISTRICT ATTORNEY KINGS COUNTY, LOW-LEVEL MARIJUANA PROSECUTIONS IN BROOKLYN PLUNGED BY OVER 91% THIS YEAR AS DISTRICT ATTORNEY'S OFFICE EXPANDED DECLINATION POLICY (July 27, 2018).  That was the state of the law when the jury deliberated in this case.  In explaining the new policy, District Attorney Gonzalez cited the racial disparities in marijuana arrests.  *Id.*  Such arrests may have disparately affected people living in East Flatbush, where Crooms arrested Theodat.  In 2017, African Americans made up more than 87% of that neighborhood.  *New York City Neighborhood Data Profiles: BK17: East Flatbush*, NYU FURMAN CENTER, https://furmancenter.org/neighborhoods/view/east-flatbush

Theodat testified as follows.  Around 1:30am on May 25, 2015, he left a barbeque near East 46th Street and Avenue Q to go to work.  Upon leaving, he saw his friend, Jahneiro Plummer, in front of Plummer's house.  They bumped fists and, immediately after, three police officers approached them—Crooms, McDonald, and NYPD Officer Dalsh Veve.[3]   The officers asked Plummer what he was doing outside.  Then, Crooms grabbed Theodat and twisted his arm behind his back, while the others approached Plummer.  The officers then searched Theodat, Plummer, and the surrounding area.  A group of about ten people had gathered and were watching this scene.  Theodat and Plummer were arrested and taken to the police precinct. According to Theodat, he felt like he was held there for about three or four hours. According to the command log, Theodat left the precinct at 4:20am.  Shortly after his release, Theodat learned that he had been arrested for smoking marijuana. Theodat testified that neither he nor Plummer were smoking that night, though he never specifically stated that he did not possess any marijuana that night.

---

(last visited Sept. 12, 2019).  Several weeks ago, on August 28, 2019, a New York law went into effect that decriminalizes the possession and smoking of small amounts of marijuana.  *New York Marijuana: Statewide Decriminalization Takes Effect Today*, CBS NEW YORK (Aug. 28, 2019, 9:50 AM), https://newyork.cbslocal.com/2019/08/28/new-york-marijuana-decriminalization/. The official reason Crooms gave for arresting Theodat—smoking marijuana—is no longer an arrestable offense.

[3] Dalsh Veve was originally a defendant in this case, but the plaintiff has dismissed his complaint against Veve.

The jury found that Crooms had falsely arrested and battered Theodat, and that McDonald had failed to intervene in the false arrest.  For the false arrest, it awarded Theodat $100,000 in compensatory damages and $200,000 in punitive damages against Crooms.  It awarded Theodat $1,000 in compensatory damages and $7,500 in punitive damages against Crooms for battery.  The jury also awarded Theodat $150,000 in punitive damages against McDonald for failing to intervene in the false arrest.

## II

### A. New Trial for Crooms

Under Federal Rule of Civil Procedure 59, a court may grant a new trial, following a jury trial, "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a).  "The circumstances ordinarily recognized as supporting a new trial are that the jury has reached 'a seriously erroneous result' or that the verdict is a 'miscarriage of justice,' *i.e.*, that the verdict is against the weight of the evidence, that the damages awarded were excessive, or that for stated reasons the trial was not fair to the moving party."  *Mallis v. Bankers Tr. Co.*, 717 F.2d 683, 691 (2d Cir. 1983) (quoting *Bevevino v. Saydjari,* 574 F.2d 676, 684 (2d Cir.1978)).  A new trial may also be premised on errors "of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury."  *Montgomery Ward & Co. v. Duncan*, 311 U.S.

243, 251 (1940).  However, "[i]t is well settled that a trial judge's disagreement with the jury's verdict is not sufficient reason to grant a new trial."  *Mallis*, 717 F.2d at 691.

### 1.  Weight of the Evidence

The defendants first argue that they are entitled to a new trial because the jury's verdict was against the weight of the evidence.  The defendants highlight that Theodat never explicitly testified at trial that he did not possess the marijuana that Crooms recovered, nor did he present evidence that the defendants planted the marijuana—he only stated that he was not smoking marijuana that night.  But that sufficiently refuted Crooms's testimony, in which he clearly asserted that Theodat had been smoking marijuana that night, not that Theodat merely possessed it.  The jury was entitled to discredit Crooms's version of events.

The Court may also, on its initiative, address concerns that the jury has reached a seriously erroneous result.  *See Kirschner v. Office of Comptroller of City of New York*, 973 F.2d 88, 89 (2d Cir. 1992).  Here, there is thin evidence supporting Theodat's contention that Crooms arrested him without probable cause.

Generally, courts should not "intrude upon the jury function of credibility assessment."  *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992).  If a jury credits one party's version of events over another party's version, its finding should not be disturbed unless the credited version is "patently incredible or defies

physical realities." *Id.*  It may well be that "a trial judge should be most inclined to disturb a jury verdict, based entirely or primarily upon witness credibility, where one conflicting account is so inherently implausible as to tax credulity." *Ricciuti v. New York City Transit Auth.*, 70 F. Supp. 2d 300, 308 (S.D.N.Y. 1999).

That circumstance is not extant here.  First, the record shows that the other two police officers with Crooms—McDonald and Veve—also both had arrests that night.  McDonald testified that he had made an arrest that night.  And Crooms testified that Veve arrested Plummer.  Therefore, the jury could have inferred that Crooms was motivated to falsely arrest Theodat so that he too could have an arrest during that tour and inflate his arrest record.

Second, Theodat testified that when the officers approached him and Plummer, they said to Plummer "What you doin' outside, [Jahneiro]?"  Tr. at 48. From that testimony, the jury could infer that the officers had a prior familiarity with Plummer that caused the double arrest of Plummer and Theodat.  Though Crooms denied knowing Plummer before that night, the jury was allowed to credit Theodat's testimony that the officers addressed Jahneiro Plummer by name.  Further, Crooms testified that he debriefed Plummer that night, and Crooms admitted that he wanted information from Plummer.  From that evidence, the jury could infer that Theodat's arrest was tied to his contact with Plummer and, perhaps, that the police arrested Theodat because they wanted information from him too.

6

Accordingly, the record contains evidence from which the jury could have inferred an alternative motive for Theodat's arrest, and the Court cannot disturb the jury's verdict.

### 2.  Probable Cause Jury Instruction

The defendants next argue that they are entitled to a new trial because the Court did not charge the jury that probable cause for any crime was sufficient to establish that Crooms had probable cause to arrest Theodat.

Where a court has improperly charged a jury, it will grant a new trial only when the error is prejudicial or the charge was highly confusing. *Dancy v. McGinley*, 843 F.3d 93, 100, 116 (2d Cir. 2016).  "The error must be sufficiently serious to undermine the very integrity of the trial."  *Id.* (internal quotation marks omitted). Under *Devenpeck*, an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Here, we need not reach the issue whether the Court erred in declining to include a *Devenpeck* instruction because, even if the Court did err, it was not prejudicial to the defendants, as it would not have affected the jury's verdict. Theodat testified to one series of events: he left a barbeque, he greeted his friend Plummer, and Crooms arrested him.  Crooms testified to another series of events: he smelled marijuana, he saw Theodat smoking marijuana by himself, he saw Theodat

7

drop the marijuana cigarette on the ground, and he arrested Theodat.  It would defy logic for the jury to find that Theodat had unlawfully possessed marijuana or littered but that he had *not* also been smoking marijuana.   Accordingly, any error was harmless and is not a basis for a new trial.

### 3.  Qualified Immunity

The defendants contend that Crooms is entitled to qualified immunity or, in the alternative, that the Court should have submitted special interrogatories to the jury regarding qualified immunity.

For qualified immunity to apply in a false arrest case, the officer need only have had "arguable probable cause," which exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Dancy*, 843 F.3d at 107.  Once the jury has resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court.  *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007).

Here, under the jury's findings, the officer is not entitled to qualified immunity.   As explained above, Theodat's and Crooms's accounts were diametrically opposed.  By finding that Crooms had falsely arrested Theodat, the jury necessarily credited Theodat's version of events and discredited Crooms's.

Under Theodat's version of events, it was not objectively reasonable for Crooms to believe that probable cause existed, and reasonably competent officers could not disagree as to whether the probable cause test was met.  Under that version, Theodat was merely greeting a friend when Crooms arrived, not smoking marijuana, not holding a marijuana cigarette, and not littering.  Further, the fact that the jury awarded punitive damages against Crooms is a strong indicator that qualified immunity is inappropriate here.  See *Adedeji v. Hoder*, 935 F. Supp. 2d 557, 570–71 (E.D.N.Y. 2013) ("[T]he Court notes that the jury's determination that punitive damages were appropriate in this case makes Officer Hoder's assertion of qualified immunity seem especially hollow."  (internal quotation marks omitted)).  For these reasons, special interrogatories would not have proven useful in this case.

## 4.  Evidentiary Issues

The defendants next argue that the Court abused its discretion by (a) precluding the defendants from introducing evidence of Theodat's prior arrests and incarceration and (b) admitting evidence related to Plummer's arrest.

Evidentiary rulings are reviewed for an abuse of discretion.  *United States v. Cadet*, 664 F.3d 27, 32 (2d Cir. 2011).  Under Federal Rule of Civil Procedure 61, "[u]nless justice requires otherwise, no error in admitting or excluding evidence . . . is ground for granting a new trial . . . .  At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."

Fed. R. Civ. P. 61. "Thus, an evidentiary error in a civil case is harmless 'unless [the appellant demonstrates that] it is likely that in some material respect the factfinder's judgment was swayed by the error.'" *Tesser v. Bd. of Educ. of City Sch. Dist. of New York*, 370 F.3d 314, 319 (2d Cir. 2004) (alteration in original).

### a. Theodat's Prior Arrests

Under Federal Rule of Evidence 403, a "court may exclude relevant evidence if its probative value is substantially outweighed by . . . unfair prejudice." Fed. R. Evid. 403. "Because the trial judge is in the best position to evaluate the evidence and its effect on the jury, his Rule 403 rulings are entitled to considerable deference and will not be overturned absent a clear abuse of discretion." *Costantino v. David M. Herzog, M.D., P.C.*, 203 F.3d 164, 173–74 (2d Cir. 2000).

Here, the Court did not abuse its discretion in concluding that the probative value of Theodat's arrest records was substantially outweighed by unfair prejudice. In his testimony, Theodat did not focus on the emotional distress he suffered by being arrested and temporarily held in custody. Therefore, the evidence of his prior arrests held little probative value in the jury's determination of his damages. And the prejudice that Theodat would experience if the jury heard about his prior arrest record is immense, as it could have caused the jury to conclude that this arrest was also valid.

10

**b. Plummer's Arrest**

Under Federal Rule of Evidence 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence [and] the fact is of consequence in determining the action."

Here, the Court did not abuse its discretion in admitting evidence related to Plummer's arrest.  The circumstances of his arrest were relevant because, according to Theodat, the two of them were arrested together.   Information relating to Plummer's arrest could corroborate Theodat's version of events, in which Theodat was arrested after fist-bumping Plummer, not smoking marijuana.   That version differed drastically from Crooms's, in which the two men were arrested separately and at different locations.   Further, Plummer's arrest report was admissible as a public record under Federal Rule of Evidence 803(8), and the Court did not err in admitting it into evidence.[4]   *See Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991) ("We agree with the district court that the police report itself would be admissible as a public record . . . .").

---

[4] The defendants also argue that Crooms was not competent to testify about the circumstances of Plummer's arrest, as he was not the arresting officer.   This argument is unavailing, as Crooms was admittedly present during the arrest and could testify to what he remembered.

### 5. **Plaintiff's Counsel's Misconduct**

The defendants contend that Theodat's counsel engaged in misconduct during his summation when he (a) argued that the defendants planted marijuana at the scene of the arrest, (b) suggested that the defendants sought to receive overtime pay during their shift that night, and (c) called Theodat a "victim," stated that he suffered "trauma," and stated that the defendants did not know whether an arrest would cause adverse immigration consequences.  Tr. at 314–16.

"[W]hen the conduct of counsel in argument causes prejudice to the opposing party and unfairly influences a jury's verdict, a new trial should be granted." *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 540 (2d Cir. 1992).  However, "[t]rial courts possess broad discretion to determine when the conduct of counsel is so improper as to warrant a new trial," *Matthews v. CTI Container Transp. Int'l Inc.*, 871 F.2d 270, 278 (2d Cir. 1989), and "[r]arely will an attorney's conduct so infect a trial with undue prejudice or passion as to require reversal."  *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 271 (2d Cir. 1999) (internal quotation marks omitted).  In evaluating an attorney's conduct, "the court must consider such a claim in the context of the trial as a whole, examining, among other things, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, and the manner in which the parties and the court treated the comments." *Levitant v. City of New York Human*

*Res. Admin.*, 914 F. Supp. 2d 281, 311 (E.D.N.Y. 2012), *aff'd*, 558 F. App'x 26 (2d Cir. 2014).

### a. Planting of Evidence

Regarding the comments about the defendants planting the marijuana, the Court concludes that it was not unfairly prejudicial for the attorney to ask the jury to consider that the defendants may have done so.  Though Theodat had no personal knowledge about whether the defendants planted the marijuana—and did not testify on the subject—it is, inevitably, the logical conclusion from his testimony.  Though his attorney speculated as to how the defendants came upon this marijuana, the Court instructed the jury repeatedly that the attorneys' statements in summation were not evidence.   Further, Theodat's attorney only discussed the possibility that the marijuana was planted once, briefly, during summation.

### b. Overtime

Nor were Theodat's attorney's statements about the defendants getting overtime unfairly prejudicial or influential on the jury.  Though the attorney did speculate about the defendants' motivations in arresting Theodat, it was not prejudicial enough to influence the jury unfairly and warrant a new trial.  In context, Theodat's attorney mentioned the overtime as an additional point when discussing the fact that all three officers on that tour made arrests that night—that was the attorney's key point in explaining why the defendants arrested Theodat, not that they

wanted overtime.  And the Court's instructions to the jury not to take attorneys' arguments as evidence were especially effective here because the Court gave the jury that instruction in response to an objection to the comments about overtime.

### c.  "Victim," "Trauma," and "Immigration"

Furthermore, Theodat's attorney's comments that Theodat suffered trauma and was a victim do not warrant a new trial.  The attorney called Theodat a victim of the defendants only once, which was not unfairly prejudicial, as Theodat was claiming to be a victim of a false arrest.  The attorney's mention of Theodat's trauma was also an isolated comment and, given the Court's instructions not to take attorneys' arguments as evidence, was not sufficient to unfairly influence the jury.

Lastly, Theodat's attorney's comment that the defendants did not know if the arrest would cause Theodat to have immigration problems was, in context, too vague to be prejudicial.  In that moment, the attorney was highlighting the various collateral consequences of an arrest, and his point was that the defendants did not care how the arrest affected him—not that Theodat may have actually had adverse immigration consequences.  Further, it too was an isolated comment that the Court concludes was not unfairly influential.

### B. Judgment as a Matter of Law for McDonald

The defendants next argue that McDonald is entitled to judgment as a matter of law on Theodat's failure to intervene claim because no reasonable juror could

have found that McDonald knew of and had a reasonable opportunity to prevent the false arrest.

To establish that an officer failed to intervene, a plaintiff must prove that the officer (1) observed or had reason to know that another officer made an unjustifiable arrest and (2) had a realistic opportunity to intervene in the arrest. *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)

This argument is unavailing. Theodat testified that McDonald was present when Crooms falsely arrested Theodat. And his testimony did not necessitate a finding that McDonald did not have time to intervene in the arrest—Theodat stated that McDonald approached with Crooms and that McDonald "handl[ed]" him at some point during the arrest. Tr. at 83. From that testimony, a reasonable juror could conclude that McDonald observed the arrest and that he had a realistic opportunity to intervene in the arrest.

## C. Excessive Damages

"[A] judgment cannot stand where the damages awarded are so excessive as to shock the judicial conscience." *Scala v. Moore McCormack Lines, Inc.*, 985 F.2d 680, 683 (2d Cir. 1993) (internal quotation marks omitted). "It is well established that the trial judge enjoys 'discretion to grant a new trial if the verdict appears to [the judge] to be against the weight of the evidence,' and that '[t]his discretion includes overturning verdicts for excessiveness and ordering a new trial without qualification,

or conditioned on the verdict winner's refusal to agree to a reduction (remittitur).'" *Lore v. City of Syracuse*, 670 F.3d 127, 176–77 (2d Cir. 2012) (alterations in original) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 433 (1996)).

"In reviewing a claim that the jury awarded excessive damages, [courts] view the evidence and draw all factual inferences in favor of the appellee, and [they] accord substantial deference to the jury's determination of factual issues." *Scala*, 985 F.2d at 683 (internal quotation marks and citation omitted). "In determining whether a particular award is excessive, courts have reviewed awards in other cases involving similar injuries, bearing in mind that any given judgment depends on a unique set of facts and circumstances." *Id.* at 684.

### 1. Compensatory Damages

The defendants first argue that the compensatory damages awarded to Theodat—$101,000 total for the false arrest and battery—are excessive and should be set aside or reduced.

A plaintiff subjected to a false arrest can collect compensatory damages for loss of liberty as well as for physical and emotional distress. *See Martinez v. Port Authority of New York and New Jersey,* 445 F.3d 158, 161 (2d Cir.2006); *Kerman v. City of New York,* 374 F.3d 93, 125 (2d Cir. 2004).

In *Gardner*, the Second Circuit reduced a compensatory damages award for loss of liberty of $150,000 (approximately $295,000 in 2019)[5] to $50,000 (approximately $98,000 in 2019) because he was in custody for approximately eight hours. *Gardner v. Federated Dep't Stores, Inc.*, 907 F.2d 1348, 1353 (2d Cir. 1990). The *Gardner* court also upheld a damages award of $150,000 (approximately $295,000 in 2019) for pain and suffering because he was punched several times and because he suffered ear aches, lockjaw, TMJ, and an atypical anxiety disorder, though he had not sought any psychological treatment and his treatment for physical injuries was "limited." *Id.*

In *Gayson*, the court reduced the plaintiff's compensatory damages from $310,000 (approximately $488,000 in 2019) to $160,000 (approximately $252,000 in 2019) where the plaintiff was falsely arrested, pushed, grabbed, and knocked to the ground—though he was not subject to excessive force.[6] *Martinez v. Gayson*, No. 95-CV-3788 (ILG), 1998 WL 564385, at *6 (E.D.N.Y. June 30, 1998). He was in custody for five hours, he was tried and acquitted, and he did not sustain any physical injuries. He also suffered some humiliation. *Id.*

---

[5] In considering similar cases, the Court uses the Bureau of Labor Statistics's Inflation Calculator to estimate dollar equivalents. *See* CPI Inflation Calculator, http://data.bls.gov/cgi-bin/cpicalc.pl; *see also Alla v. Verkay*, 979 F. Supp. 2d 349, 372 & n.9 (E.D.N.Y. 2013) (using the CPI Inflation Calculator for this purpose).

[6] *Gayson* also demonstrates that the defendants are incorrect that a jury finding of no excessive force is incompatible with compensation for physical trauma and pain. *See Gayson*, 1998 WL 564385, at *6.

Here, viewed in the light most favorable to Theodat, the evidence shows that he was in custody for approximately two hours and 45 minutes.  Crooms twisted Theodat's arm behind him and his "arm was killing" him.  Tr. at 68.  He had pain in his shoulder, which was swollen for "a week or two after," and still "messes with" him.  Tr. at 68.  He went to the doctor only once because he did not have insurance, and they told him to do physical therapy, which he then attempted to do on his own because he was uninsured.  Though in the above-mentioned cases the plaintiffs endured somewhat longer detentions coupled with worse pain and suffering, those courts still gave *significantly* higher damages awards.  Looking at those cases and considering Theodat's loss of liberty and continuing physical pain, the Court cannot conclude that $101,000 in compensatory damages was so excessive as to shock the judicial conscience.

### 2. Punitive Damages

The defendants next argue that the Court must vacate or reduce the jury's punitive damages awards because the defendants did not engage in reprehensible conduct, the disparity between the compensatory damages and the punitive damages is great, and the awards are excessive when compared to similar cases.[7]

---

[7] The Court rejects Theodat's argument that the defendants waived this argument. As the defendants point out, the Court reserved the right to rule on whether punitive damages were appropriate.

"Punitive damages are available in a § 1983 action when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Lee v. Edwards,* 101 F.3d 805, 808 (2d Cir.1996) (internal quotation marks omitted). Three guideposts assist in determining whether a punitive damage award is excessive: "[(a)] the degree of reprehensibility of the tortious conduct; [(b)] the ratio of punitive damages to compensatory damages; and [(c)] the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *Id.* at 809.

### a. Reprehensibility

Determining the reprehensibility of defendants' actions entails considering whether they (1) engaged in violent conduct; (2) acted with malice or deceit; and (3) engaged in repeated acts of misconduct. *See id.* at 809. The defendants have met the first factor because—though Crooms did actually engage in physical violence against Theodat—when Crooms initiated a false arrest and, to a lesser extent, when McDonald allowed it to happen, they abused their authority. The Second Circuit has recognized such abuse as "an element of real and threatened force." *Id.* at 810; *see also Alla v. Verkay*, 979 F. Supp. 2d 349, 373 (E.D.N.Y. 2013) (Block, J.) (concluding a false arrest qualifies as violent conduct).

They have also met the second factor, as the jury necessarily found that Crooms lied about Theodat's arrest, and the evidence supports a finding that

McDonald was lying when he testified that he did not remember the events of that night.  Though McDonald may not have remembered anything about a run-of-the-mill marijuana arrest, it is less believable that he does not remember witnessing and assisting in a false arrest.  It is not clear from the evidence, however, that the defendants engaged in repeated misconduct, but that does not bar a punitive damages award.  *See Alla*, 979 F. Supp. 2d at 374.

### b.  Ratio

The ratio here between punitive damages to compensatory damages is approximately 3.5:1.  In *Haslip*, the Supreme Court stated that a ratio of 4:1 "does not cross the line into the area of constitutional impropriety," though it acknowledged that it may be close.  *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 24 (1991).  The ratio here, therefore, is not egregious.

### c.  Comparable Cases

In *King*, two court security officers—whom the jury found used excessive force against and maliciously prosecuted the plaintiff—strip searched the plaintiff, punched him, put him in a chokehold, held him in the courthouse for several hours, and caused him to be held at Rikers for two months.  *King v. Macri*, 993 F.2d 294, 296–97 (2d Cir. 1993).  The Second Circuit reduced aggregate punitive damages from $175,000 (approximately $311,000 in 2019) to $100,000 (approximately $178,000 in 2019) against one court security officer and from $75,000

(approximately $133,000 in 2019) to $50,000 (approximately $89,000 in 2019) against the other. *Id.* at 299.  Despite the undoubtedly more egregious conduct of those officers, the Second Circuit remitted the punitive damages to lesser awards than the jury awarded Theodat here.

In *Disorbo*, the Second Circuit reduced punitive damages against a police officer for excessive force and abuse of process from $1.275 million (approximately $1.77 million in 2019) to $75,000 total (approximately $104,000 in 2019).  *DiSorbo v. Hoy*, 343 F.3d 172, 189 (2d Cir. 2003).   There, the police officer violently slammed the plaintiff against a wall, choked her, pushed her to the ground, and struck her because she refused his personal advances. *Id.* at 175.  Again, the Second Circuit reduced damages to an amount lower than the jury awarded here in a case with far more egregious conduct.

In *Milfort*, a false arrest case involving neither excessive force nor an award of compensatory damages, and in which the plaintiff was in custody for an hour and a half, the court reduced the punitive damages against a state court officer from $40,000 (approximately $43,000 in 2019) to $5,000 (approximately $5,500 in 2019). *Milfort v. Prevete*, 3 F. Supp. 3d 14, 26 (E.D.N.Y. 2014).  Though the conduct here was somewhat more egregious and resulted in physical injury to Theodat, the facts of *Milfort* are closer to this case than the above cases.

These cases persuade the Court that the punitive damages awards against the defendants are excessive and must be reduced.  Accordingly, the Court remits the punitive damages against Crooms to $15,000, for the false arrest and the battery, and the punitive damages against McDonald to $5,000, for failing to intervene in the false arrest.  Those amounts reflect the fact that the defendants engaged in reprehensible conduct, while also considering that their behavior did not rise near the level of conduct that warranted extremely high awards in other cases.  The Court concludes that it is the "maximum amount that would be upheld" as not excessive. *Martinez*, 445 F.3d at 160.

### III

The defendants' motions under Rule 50 and Rule 59 are denied, except to the extent that defendants seek a new trial or remittitur of the jury's punitive damages awards.  The Court grants a new trial on punitive damages, unless Theodat accepts a remittitur of Crooms's punitive damages from $207,500 to $15,000 and of McDonald's punitive damages from $150,000 to $5,000.

**IT IS SO ORDERED.**


/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

September 13, 2019
Brooklyn, New York

22